Roberto LUERA, individually, Audrey Luera, individually, and children Louis Luera and Camilio Luera, through their best friends Roberto Luera and Audrey Luera, Eduardo M. Lucero, individually; Mary Lucero, individually; Eduardo D. Lucero, a minor through his next best friends Eduardo M. Lucero and Mary Lucero; Judy M. Montero, individually; Ricky B. Cisneros, individually; Robert E. Salas, individually; Mary R. Lucero, individually; Glen M. Lucero, individually; Charlotte Rodriguez, individually, Arturo J. Rodriguez, Anelita Rodriguez and Tularosa Rodriguez, individually; Arturo J. Rodriguez, friend Charlotte Rodriguez; Rudolph Gonzales, Jr., individually; Geraldine I. Gonzales, individually; Antonio Ulibarri, individually; Antonio Ulibarri, Jr., a minor through his next best friend Antonio Ulibarri; Rudolfo Gonzales, individually; Valerie Gonzales, a minor, through her next best friend, Rudolfo Gonzales; Sadie S. Suniga, individually; Reba L. Yepes, individually; Eddy Manuel Yepes, individually; Cristobal Lois Yepes, a minor, through his next best friends Reba L. Yepes and Eddy Manuel Yepes; Karen Musikka, individually; Shaska Star Musikka, a minor, through her next best friend, Karen Musikka; Tony Marquez, individually; Michael Miera, individually; Van S. Lucero, individually; Gail Lucero, individually; Rudolfo Lucero, Monsita Lucero and Teofilio Lucero, minors, through their next best friends, Van S. Lucero and Gail Lucero; Nita Gonzales, individually; Estanislado Alemana-Gonzales, a minor, through her next best friend Nita Gonzales; Bernard A. Alvarado, individually; Gina G. Alvarado, individually; Tudalesia Gonzales, a minor, through her next best friends Bernard A. Alvarado and Gina G. Alvarado; Frank Lucero, individually; Cheryl Lucero, individually; Dominica Lucero, Mariquita Lucero, and Francisco Lucero, minors, through their next best friends Frank Lucero and Cheryl Lucero; Elana Salas, individually, Che-

lin Salas, Camila Salas and Celestina Salas, through their next friend, Elena Salas, Plaintiffs,

v.

Officers James "Buster" SNYDER, Gordon Christopher, Cherter Brannon, David Bricker, Daniel Reed, Leslie L. Jenkins, Leslie C. Gebhardt and Richard Fisher, Thomas Coogan, Chief of Police of the City and County of Denver, and the City and County of Denver, Defendants.

Civ. A. No. 81–K–1386.

United States District Court, D. Colorado.

Dec. 27, 1984.

Wallace Prugh and Christopher A. Miranda, Gerash & Robinson, P.C., Denver, Colo., for plaintiffs.

Eduardo Lucero, pro se.

Theodore S. Halaby and Jonathan A. Cross, Denver, Colo., for defendants.

## ORDER ON POST TRIAL MOTIONS

KANE, District Judge.

Plaintiffs filed this action alleging that: 1) defendants violated their rights under 42 U.S.C. § 1985 by conspiring to use excessive force to disperse a community gathering in the City and County of Denver at Columbus Park, popularly known as La Raza Park; and, 2) that the plaintiffs were damaged by the defendants' negligent planning for the opening of the park and by the defendants' negligent response to, and dispersal of, the gathering.

After a three week trial, a jury found in favor of defendants Fisher, Snyder, and

Coogan on the conspiracy claim. On the negligence claim, the jury found that the plaintiffs and defendants were equally negligent. Under Colorado's comparative negligence statute, C.R.S. 13–21–111(1), the plaintiffs recover no damages.

The following motions are before me: 1) plaintiffs' motion for judgment notwithstanding the verdict; 2) plaintiffs' motion for a new trial which was filed and signed by the plaintiffs' attorneys, Gerash and Robinson, P.C.; 3) plaintiffs' *"pro se"* motion for a new trial; 4) a supplement to the *"pro se"* motion for a new trial, which alleges the discovery of new and material evidence; and, 5) a motion by plaintiffs to deny plaintiffs' counsel a claimed attorneys' lien.

## I. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

■ Plaintiffs move for the entry of judgment in favor of the plaintiffs under eight years of age, notwithstanding the jury's verdict against all of the plaintiffs. Plaintiffs, citing *Roberts v. Fisher*, 169 Colo. 288, 455 P.2d 871 (1969), contend that individuals under the age of eight cannot be found negligent, and therefore the jury's verdict, that those plaintiffs under eight years of age were fifty percent negligent, cannot stand.

Plaintiffs did not move for a directed verdict on this issue at the close of the evidence. The plain meaning of Rule 50(b) of the Federal Rules of Civil Procedure is that a motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence; *see* Wright & Miller, Federal Practice and Procedure: Civil § 2537 at 596 (1971). Because the plaintiffs' attorneys did not move for a directed verdict on this issue, I deny the motion for entry of judgment notwithstanding the verdict.

## II. PLAINTIFFS' MOTION FOR A NEW TRIAL

This motion for a new trial, filed by plaintiffs' attorneys, asserts that I made 22 errors. The motion contains one citation of authority. In contravention of Rule 408(A) of the Local Rules of Practice for this district, the motion fails to cite the section in the Federal Rules of Civil Procedure under which the movant requests relief. Despite these not insignificant shortcomings, I will address the 22 contentions: I have divided them into the following categories: A) evidentiary rulings; B) jury selection; C) jury instructions; and, D) directed verdicts and motions to amend.

### A. Evidentiary Rulings

■ Plaintiffs contend that it was error not to allow Denver's mayor, Federico Pena, to testify about the Park incident and about a letter he wrote to Wilma Martinez recommending that this lawsuit be filed. Mayor Pena was a state legislator at the time of the incident and when he wrote the letter.[1] This issue was ruled on *in limine;* my ruling, then and now, is that because the mayor has no personal knowledge of the incident, he was not competent to testify. Mayor Pena's April 26, 1984 affidavit, at paragraph 3, states that he "... was not in Denver during the occurrence of such events," and that "Any information [he] received concerning such events was either through constituents or other second hand sources." The plaintiffs have not produced any evidence that belies my finding that Mayor Pena's proposed testimony and his letter to Wilma Martinez are inadmissible. I conclude that both were properly excluded.

Plaintiffs also contend that I erred by not permitting Art Dill, Eldon Caldwell and Leslie Gebhardt to testify.

Gebhardt was dismissed as a defendant in the case on the first day of trial because the plaintiffs' attorneys failed to serve him with process. Despite my ruling on the fourth day of trial that the plaintiffs could call Gebhardt to testify, they did not call him. Plaintiffs' apparent tactical decision not to call Gebhardt cannot impute error to the court.

██ I refused to allow the plaintiffs to call Dill and Caldwell. Their proposed testimony of changes made in police department policies after the incident is not admissible because of the public policy of encouraging subsequent remedial measures. *See* Rule 407 of the Federal Rules of Evidence. If plaintiffs were permitted to use such potentially damning evidence, remedial measures which are to the benefit of the public at large might be foregone by defendants afraid of the prejudicial effect such evidence would have in lawsuits.

Likewise, plaintiffs contend that I erred when, after permitting defense counsel to cross-examine Digrazia, an expert witness, concerning feasible changes in Denver's policy of issuing summonses and citations to organizers of potentially volatile gatherings in a city park, I sustained objections to plaintiffs' counsels' attempt to examine him on re-direct concerning the actual implementation after the incident of any such changes within the Denver Police Department. Cross-examination regarding the feasibility of policy changes does not open the door, on redirect, to testimony concerning implementation of new policy. Digrazia did not contest the feasibility of instituting such policy changes. Therefore, evidence of actual implementation of policy changes is inadmissible as irrelevant and as evidence of a subsequent remedial measure prohibited by Federal Rule of Evidence 407.

██ Plaintiffs further contend that because I allowed the defendants to introduce station KUSA's videotape of the incident, my refusal to admit station KCNC's and station KMGH's videotapes of the incident was error. Plaintiffs, however, neglected to include KCNC's and KMGH's videotapes in the pre-trial order whereas the defendants did include KUSA's videotape. In fact, plaintiffs' counsel were the first to list KUSA's videotape as an exhibit. Federal Rule of Civil Procedure 16(e) states that the pre-trial order "... shall control the subsequent course of the action unless modified by a subsequent order," and that the pre-trial order shall be modified only to prevent "manifest injustice." Although I don't doubt the plaintiffs' case would have been stronger had it been more fully documented, their own failure to comply with the rules of civil procedure can hardly create "manifest injustice." Counsel for defendants clearly had the right to rely on the pre-trial order. An eleventh hour effort to endorse such exhibits would have precluded adequate preparation by defendants in order to correct demonstrably inadequate preparation by plaintiffs. They would have needed time to study the videotape before trial. I conclude that the plaintiffs' motion *in limine* to exclude the KUSA's videotape was properly denied and that KCNC's and KMGH's videotapes were properly excluded. Parenthetically, each broadcast station had the right to notice and a hearing to seek protective orders concerning "take-outs" and the scope of subpoenae duces tecum.

### B. Jury Selection

Plaintiffs contend that I ruled erroneously: 1) that attorney-conducted *voir dire* be limited to 20 minutes per side; that 2) prospective juror that Danalek could not be excluded for cause and; 3) that the impanelled jury would not be stricken despite plaintiffs' allegation that the defendants used their "... peremtory [sic] challenges for the purposes of striking all minorities and/or spanish [sic] surname jurors."

██ 1. The court's discretion to control the length of attorney-conducted *voir dire* is not abused unless the parties are prevented from effectively exercising peremptory and cause challenges. *Darbin v. Nourse,* 664 F.2d 1109, 1112–13 (9th Cir. 1981). Plaintiffs' counsel did not object at trial to the time limitation. It is well settled that the federal trial court does not have to allow attorneys to conduct any *voir dire* at all.[1] Rule 47(a), Fed.R.Civ.P.; *Per-*

---

**1.** I am perhaps overly sensitive to this particular challenge. The tradition of this court is to have the trial judge conduct the *voir dire* examination of jurors. I am quite comfortable with that tradition and believe it is demonstrable that most attorney-conducted *voir dire* needlessly wastes time, annoys jurors and creates confu-

*ry v. Allegheny Airlines,* 489 F.2d 1349, 1352 (2d Cir.1974). In addition to 20 minutes per side of attorney conducted *voir dire,* I examined the jurors extensively.

■ 2. The next contention is that Pat Danalek should have been excused from the jury for cause. However, unless the juror shows the actual existence of an opinion likely to raise the presumption of partiality, the juror need not be excused for cause. *Reynolds v. United States,* 98 U.S. 145, 157, 25 L.Ed. 244 (1878). The plaintiffs did not demonstrate that this juror showed any such opinion. The plaintiffs not having demonstrated, now or during *voir dire,* that this juror was partial, I conclude that my denial of the challenge for cause was proper.

■ 3. As to the charge that the defendants used their peremptory challenges to exclude minority jurors, a recent decision by the Florida Supreme Court offers a test for measuring the alleged discriminatory use of peremptory challenges.

> The initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, the trial court must decide if there is a substantial likelihood

that the peremptory challenges are being exercised solely on the basis of race....

> *State v. Neil,* 457 So.2d 481 (1984).

The plaintiffs' attorneys made no such timely objection and have demonstrated only that two of the individuals peremptorily excused by defendants were Spanish surnamed. One of those so challenged was a lawyer. The plaintiffs have not demonstrated a strong likelihood that the two jurors were challenged solely because of their race; I will not pursue a vapid accusation that they were. To do so would require a speculative inquiry into the subjective motives of defense counsel. *See King v. County of Nassau,* 581 F.Supp. 493 (E.D.N.Y.1984). I find that the defendants did not use their peremptory challenges improperly.

### C. Jury Instructions

■ Plaintiffs contend that an instruction should have been given to the jury that children under eight years of age cannot be found negligent for purposes of weighing comparative negligence. Plaintiffs' attorneys, however, neglected to tender such an instruction at the appropriate time. Rule 51 Fed.R.Civ.P. states that "... No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict...." The plaintiffs, having made no such objection or tender may not now make this objection as a ground for a new trial. Obviously, I do not regard this matter as plain error. Plaintiffs' strategy,

---

sion. It is frequently pointless and often pathetically maladroit.

In the instant case, plaintiffs' most experienced counsel made an impassioned plea for permission to conduct the *voir dire.* After inundating me with canned briefs and a seemingly endless profusion of reprints of articles by psychologists, all of which I read and all of which lacked any genuine qualities, I was impressed by one point: He suggested that attorney conducted *voir dire* examination would permit him to develop an intuitive sense of the jurors' subconscious predilections in a case involving police and members of a minority group. I certainly couldn't, but I was anxious to see him try. Accordingly, I abandoned our tradition and ordered that the *voir dire* would be conducted

jointly; first by the court and then by counsel for a period not exceeding twenty minutes per side.

I anxiously awaited the opportunity to observe this titan of the subconscious at work. On the day of trial, however, when the morning mists had been burnt from the battlefield and all was ready "to cry havoc and let slip the dogs of war," the champion of *voir dire* was nowhere to be found. He left the field and its burdens to two younger associates, one of whom conducted a woeful examination of less than the allotted twenty minutes. At least one thing was accomplished: Like a prodigal son, I have returned to tradition and think it highly unlikely that I will ever apostatize again—at least in the conduct of *voir dire* examination.

if such it can be called, was to focus on defendants' conduct. No evidence was presented or even offered by plaintiffs to show individual damage. There was no evidence of medical expenses or medical testimony of injury offered or presented.

Plaintiffs also contend that my refusal to provide the jury, during its deliberations, with the ages of all the plaintiffs warrants a new trial. I do not agree. After hearing the arguments of counsel, I instructed the jury to rely upon its collective memory.

### D. Directed Verdicts and Motions to Amend

Plaintiffs contend that directed verdicts were erroneously entered in defendants' favor. Plaintiffs state that directed verdicts were entered in favor of the defendants: 1) on plaintiffs' first claim for relief under 42 U.S.C. § 1983; 2) in favor of Denver on plaintiffs' fourth claim for relief under 42 U.S.C. § 1985; and, 3) denying plaintiffs' claim for punitive damages.

■ 1. After viewing all the evidence presented in the light most favorable to plaintiffs, *Thompson v. Kerr-McGee*, 660 F.2d 1380, 1389 (10th Cir.), *cert denied*, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 137 (1981), I concluded that the evidence did not raise a contested issue of fact regarding defendants' liability under § 1983. Therefore, I entered a directed verdict in favor of defendants on that claim.

2. Regarding the plaintiffs' contention that the entry of a directed verdict in favor of Denver on plaintiffs' fourth claim for relief constituted error, in fact no such directed verdict was entered. Plaintiffs' allegation as to this ruling is simply erroneous.

3. Likewise, a directed verdict was never entered in favor of defendants on plaintiffs' claim for punitive damages. The claim for punitive damages was in the verdict forms presented to the jury.

### III. PLAINTIFFS' "PRO SE" MOTION FOR A NEW TRIAL

The plaintiffs' second motion for a new trial purports to be *pro se;* it is not. It is signed on behalf of all the plaintiffs by one of the plaintiffs, Eduardo M. Lucero. Although Lucero received the Juris Doctor degree in 1977 from the University of Denver College of Law, he is not licensed to practice law in Colorado nor is he a member of the bar of this court. He is, however, employed in a quasi-legal position with the United States Department of Education as an Equal Employment Opportunity specialist. Accordingly, I will rule on the *"pro se"* motion fully aware it was drafted by an attorney.

### A. Ineffective Assistance of Counsel

■ In support of his motion for a new trial, Lucero's first contention is that the ineffective assistance of plaintiffs' counsel impaired the presentation of the plaintiffs' case to the jury. Lucero confuses this civil case with a Sixth Amendment based claim for the re-trial of a criminal case. Although the conviction of a criminal defendant who has not had effective assistance of counsel is repugnant to the Constitution, the civil litigant has no such constitutional bedding. What Lucero seems to be arguing is that the jury's verdict is too harsh a sanction on the plaintiffs; that but for the negligence of plaintiffs' counsel, the jury would have returned a plaintiffs' verdict. Lucero states that plaintiffs' counsel filed a poorly drafted complaint, failed adequately to preserve and catalog the evidence, failed to serve named defendants and failed to challenge the constitutionality of the city ordinances involved. *Pro se* Motion for New Trial, at ¶ 2.

A new trial is not warranted based on the attorneys' poor handling of the case. The plaintiffs having "voluntarily chosen [these] attorney[s] as [their] representative in the action ... cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation in which each party is deemed bound by the acts of his lawyer agent and is considered to have 'notice of all facts, notice of which can be charged to the attorney.'" *Link v. Wabash*, 370 U.S. 626, 634–35, 82 S.Ct. 1386,

1390–91, 8 L.Ed.2d 734 (1962) (Harlan, J.), *citing Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1879).

The conscious acquiescence of a party to his counsels' inaction is a factor weighing against affording relief to clients from the consequences of the inaction. *Link v. Wabash, supra,* at 634, 82 S.Ct. at 1390. Moreover, where as here a plaintiff is himself an attorney, efforts of the client to excuse himself from the consequences of the attorney's nonfeasance are especially weak. *Chira v. Lockheed Aircraft,* 634 F.2d 664 (2d Cir.1980). In *Chira* the lawyer was, unlike Lucero, licensed to practice law. Lucero is employed, however, in a quasi-legal position in the field of civil rights with the D.O.E. and was present in court for almost all of the proceedings. I think it grossly unfair to visit the sins of the plaintiffs' attorneys upon the defendants who in defense of a second trial would be forced to spend additional thousands of dollars and hours for yet another three week trial. If plaintiffs are so dissatisfied with the representation they received, it is more fitting and appropriate to examine the merits of their contentions in a suit against their counsel. Certainly their counsel deserve an opportunity to be heard. More to the point, opposing parties and opposing attorneys should not have to be the watchmen of their case and bear the risk of additional trials and expenses. Responsibility should flow from the act rather than attach itself to the chimerical and timeless notion of an ideal result. Succinctly stated, the defendants did their job, the plaintiffs didn't. If, as the plaintiffs say, the fault lies with their own attorneys, then that is where they should look for relief.

### B. Directed Verdict on the Third Claim for Relief

■ Plaintiffs say that I should not have granted a directed verdict in favor of Denver on the third claim for relief. That claim alleged that defendant Denver, by decisions of its administrative officers and "through the implementation of formal and informal policies and customs of harassment, antagonism, suppression, and disrup-

tion of the Chicano community" caused injury to plaintiffs, in violation of 42 U.S.C. § 1983. Third Amended Complaint at ¶ 14. Plaintiffs, however, failed to present any evidence suggestive of a city policy to harass the Chicano community. The granting of a directed verdict as to this claim was inescapable. *See White v. Talboys,* 573 F.Supp. 49, 50 (D.Colo.1983).

### C. Good Faith Defense

■ Plaintiffs' third contention is that I committed plain error by instructing the jury that good faith is an affirmative defense to a § 1985 conspiracy claim. Conspiracy, they say, is itself a violation of § 1985. Because there was evidence both of an agreement to injure plaintiffs and an overt act causing injury, they argue that there can be no good faith defense because the result would be a good faith conspiracy.

In *Pierson v. Ray,* 386 U.S. 547, 555–57, 87 S.Ct. 1213, 1218–19, 18 L.Ed.2d 288, 296 (1967), the court stated that good faith and probable cause are defenses available to police officers under § 1983. Defendants were entitled to have the jury instructed on that defense. The jury was not required to find that the conspiracy's purpose was to injure. On the contrary, the defendants' evidence, apparently accepted by the jury, was that defendants planned and devised, in good faith, a scheme to enforce the law.

### D. Inconsistent Verdicts

According to plaintiffs, the jury found on the negligence claim that defendant police officers did not act in good faith and this is inconsistent with the same jury's finding that the police acted in good faith on the conspiracy claim. This argument fails because the jury made no such finding. Denver was the only defendant on the negligence claim. The jury was not instructed that good faith was a defense to the negligence claim.

### INSTRUCTIONS ON CITY ORDINANCES

Plaintiffs object to all instructions referring to Denver city ordinances on grounds

that plaintiffs did not, on the date of the incident, engage in any of the actions prohibited by these ordinances. The record of the case, however, contains evidence upon which a jury could properly base a finding that plaintiffs did violate the city ordinances and park rules which were contained in the jury instructions.

 Plaintiffs are also barred by Rule 51, Fed.R.Civ.P. from alleging that these instructions were given erroneously. Rule 51 states that "... No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires, ... stating distinctly the matter to which he objects and the grounds of his objection..." Rule 51 is not satisfied by the general objection plaintiffs' counsel made to the instructions on city ordinances. Plaintiffs' counsel objected to the instructions as being unnecessary and cumulative. So general an objection does not meet Rule 51's requirements.

## MISCONDUCT OF DEFENDANTS' COUNSEL

 Plaintiffs allege that defense counsel engaged in the following misconduct during the trial: that defense counsel falsely quoted portions of a deposition, and; manipulated the jurors' minds by the frequent showings of the film of the incident. Plaintiffs also note that I rebuked defense counsel for other acts of misconduct. The allegation that defense counsel misled the jury by quoting portions of a deposition falsely is unsubstantiated. The allegation that KUSA's videotape was played so often as to manipulate the jurors' minds is also without merit. In a motion *in limine* I ruled that KUSA's videotape was relevant evidence and was not prejudicial to the plaintiffs' case. My verbal rebukes of defense counsel are hardly grounds for a new trial. My role is to keep zealous advocates within certain clearly defined boundaries. The jury was instructed not to draw inferences against the side to whom an admonition was addressed during the trial. Jury Instruction Number 53. The contention that the admonitions constituted error is groundless.

## IV. SUPPLEMENT TO "PRO SE" MOTION: NEWLY DISCOVERED EVIDENCE

 Appearing to be correctly captioned *"pro se,"* the plaintiff Eduardo M. Lucero claims in his own behalf that newly discovered evidence (of past internal affairs complaints against former Denver Police Officer James Snyder and a criminal charge recently filed against Snyder) corroborate the plaintiffs' claims regarding Denver's policies and customs of harassing the Spanish surnamed community. The plaintiff also claims that the City and County of Denver concealed evidence of Snyder's behavior during the trial in order to limit its liability for damages.

This contention fails. No discovery request was ever made. Even if the reports of the Denver Police Department's Staff Inspection Bureau had been requested, the SIB files of any investigation of Officer Snyder would first have to have been examined *in camera.* Under *Martinelli v. District Court,* 612 P.2d 1083 (1980), and *Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d 432 (10th Cir.1981), the party seeking discovery of SIB files faces the police department's claims of irrelevance of the SIB files and the privileged nature of the communications contained in them. I was never asked nor did I ever examine SIB files *in camera.*

With regard to the criminal charges currently pending against Snyder, the alleged incident underlying those charges took place after the trial of this case and was, therefore, not discoverable evidence in this case, was not relevant to the issues of the case, and is not grounds for a new trial.

## V. PLAINTIFFS' PRO SE MOTION TO DENY PLAINTIFFS' COUNSEL AN ATTORNEY'S LIEN

The motion is self-explanatory. In addition, plaintiffs recovered nothing. There is nothing upon which to impose an attorney's lien. The motion is granted.

IT IS ORDERED that:

1. Plaintiffs' motion for judgment n.o.v. is denied;

2. Plaintiffs' motion for a new trial filed by their attorneys is denied;

3. The plaintiffs *"pro se"* motion for a new trial, filed by plaintiff Eduardo Lucero, is denied; and

4. The *pro se* supplement to the latter motion for a new trial is denied.

5. Plaintiffs' motion to deny plaintiffs' counsel an attorney's lien is granted.