**Mahinder S. UBEROI, Plaintiff-Appellant,**

v.

**UNIVERSITY OF COLORADO, a State Institution, William McInerny, Joe Roy, Gary Arai, John Holloway, Richard Tharp, Defendants-Appellees.**

No. 84SA9.

Supreme Court of Colorado, En Banc.

Jan. 31, 1986.

Rehearing Denied Feb. 24, 1986.

See also 686 P.2d 785.

Mahinder S. Uberoi, pro se.

Cooper & Kelley, P.C., Gretchen C. Rau, Ted D. Ayres, Denver, for defendants-appellees.

NEIGHBORS, Justice.

The plaintiff, Mahinder Uberoi, appeals from the judgment of the Boulder County District Court [1] dismissing the claims for slander, assault, battery, false arrest, civil rights violations, negligence, civil conspiracy, and denial of due process he asserted against the University of Colorado and some of its employees.[2] The trial court gave three reasons for its decision. First, because the University of Colorado and the

---

1. We were required to accept jurisdiction over the appeal in this case pursuant to section 13–4–102(1)(b), 6 C.R.S. (1973), because the plaintiff has challenged the constitutionality of the notice requirement under the Colorado Governmental Immunity Act, § 24–10–109, 6 C.R.S. (1982).

2. All of Uberoi's tort claims are based on common law torts.

Regents of the University of Colorado are covered by the Colorado Governmental Immunity Act (Act),[3] Uberoi's failure to give the notice required under the Act barred his tort claims. Second, since the word "persons" in 42 U.S.C. § 1983 does not include states or override traditional concepts of state sovereign immunity, § 1983 provides no relief and, in any event, the eleventh amendment proscribed the plaintiff's claims against the university. Third, because Uberoi's complaint alleges only claims for common law torts, it does not state a claim for relief under 42 U.S.C. § 1983.

We affirm the trial court's dismissal of the tort claims and the dismissal of his 42 U.S.C. § 1983 claim that the defendants negligently deprived him of his right to due process of law under the fourteenth amendment. We hold that: (1) The eleventh amendment is inapplicable to this case; (2) the university is a person under 42 U.S.C. § 1983; and (3) certain of Uberoi's claims alleged in his complaint adequately state claims for relief under § 1983. Therefore, we reverse the order dismissing those claims and remand with directions.

## I.

This case is before us to review the trial court's judgment granting the defendants' motion to dismiss filed pursuant to C.R. C.P. 12. Therefore, we deem it appropriate to summarize Uberoi's factual allegations and legal theories contained in his complaint.[4]

We first outline the plaintiff's allegations of fact. Uberoi is a resident of the State of Colorado and a United States citizen. Each of the individual defendants is an agent, officer, or employee of the University of Colorado and each is being sued in his individual capacity and as an agent acting within the scope of his duties on behalf of

the university at all times material to the complaint.

The complaint arose out of events which occurred on May 12, 1982. On that date, Uberoi went to the office of the defendant William McInerny on the University of Colorado campus at Boulder, and requested records which he claimed were obtainable under the Colorado Open Records Act.[5] The records the plaintiff sought were those pertaining to the Joint Institute for Laboratory Astro Physics. McInerny and his staff did not give Uberoi immediate attention. After about fifteen minutes, Uberoi asked how long it would take before he would receive the records he had requested. A confrontation ensued during which Uberoi alleges McInerny called him names, slammed an office door against him, and repeatedly pushed him. University of Colorado Police Department Officers Roy and Arai were summoned and arrested Uberoi without probable cause. Arai grabbed Uberoi without warning. Uberoi informed Arai that he was a professor at the university and that his purpose in visiting McInerny's office was lawful. Arai kept Uberoi in custody without any purpose or probable cause for approximately one-half hour.

Uberoi later learned that, while the incident was in progress, Roy and McInerny had telephone conversations with the defendant John Holloway, an attorney for the university. During these conversations, these defendants conspired to keep Uberoi confined without probable cause and to obtain statements prejudicial to Uberoi from McInerny's staff. The defendants Roy, Arai, McInerny, and Holloway conspired, maliciously and without probable cause, to cite Uberoi for violating section 18–9–109, 8 C.R.S. (1978), intentional interference with university activities. On information and belief, Uberoi claims that the defendants Holloway and Richard Tharp, another at-

3. §§ 24–10–102 to –118, 10 C.R.S. (1982 & 1985 Supp.).

4. When ruling on a motion to dismiss for failure to state a claim, both the trial and appellate courts must construe the allegations in the light most favorable to the plaintiff by assuming that

the facts pleaded are true. *E.g., Bell v. Arnold,* 175 Colo. 277, 487 P.2d 545 (1971); *Denver & R.G.W.R.R. v. Wood,* 28 Colo.App. 534, 476 P.2d 299 (1970).

5. §§ 24–72–201 to –206, 10 C.R.S. (1982 & 1985 Supp.).

torney for the university, "are engaged in a continuing conspiracy to frame into unlawful acts plaintiff's lawful requests for inspection of public records."

Uberoi's complaint at issue here sets forth eleven claims for relief. In his first claim, Uberoi states that McInerny slandered him. His second claim is against McInerny and pleads the tort of assault. The third claim, also against McInerny, alleges the tort of battery. In his fourth claim, Uberoi asserts that Arai assaulted him. The fifth claim alleges the tort of battery against Arai. Officers Arai and Roy are charged with false arrest in Uberoi's sixth claim. The seventh claim for relief alleges that the defendants deprived Uberoi of his rights, privileges, and immunities secured to him by the first, fourth, fifth, ninth, tenth, and fourteenth amendments to the United States Constitution, the Constitution of the State of Colorado, and 42 U.S.C. § 1983. The eighth claim generally alleges that the university was negligent in selecting, appointing, training, supervising, and/or retaining the individual defendants. Negligence is also the basis of Uberoi's ninth claim for relief. That claim incorporates by reference the seventh claim and alleges that McInerny was negligent in failing to comply with the requirements of the Open Records Act. Uberoi also asserts that the defendants were negligent when they failed to ascertain that he was not involved in any unlawful activity, negligent in the manner in which he was arrested, and negligent in using inappropriate force during the arrest. The tenth claim for relief states that the defendants have conspired to deprive him of his constitutional rights. Finally, in his eleventh claim for relief, Uberoi alleges the defendants' conduct deprived him of due process of law under the fourteenth amendment to the United States Constitution. The last two claims also incorporate by reference the seventh claim for relief.

Uberoi first filed a complaint in the Boulder District Court on July 8, 1982. He did not serve a copy of that complaint on any of the defendants. Approximately ten months later, on May 9, 1983, Uberoi filed a second complaint with the district court and, this time, served the defendants.

Uberoi raises a number of issues on appeal. However, the resolution of the following four principal issues disposes of all his pertinent arguments: (1) Whether the Colorado Governmental Immunity Act, §§ 24–10–101 to –118, 10 C.R.S. (1982 & 1985 Supp.), applies to the University of Colorado; (2) whether the eleventh amendment bars the plaintiff from bringing suit against the University of Colorado under 42 U.S.C. § 1983; (3) whether the University of Colorado is a "person" under 42 U.S.C. § 1983; and (4) whether the plaintiff sufficiently pleaded a claim for relief under 42 U.S.C. § 1983 to withstand the defendants' motion to dismiss for failure to state a claim upon which relief may be granted.

## II.

Uberoi contends that the Governmental Immunity Act does not apply to the university or its board of regents. The thrust of his argument is that the university is not a "public entity" within the meaning of the Act. We reject his argument.

The pertinent portion of the purpose section in the Act states:

> It is further recognized that the state, its political subdivisions, and the public employees of such *public entities,* by virtue of the services and functions provided, the powers exercised, and the consequences of unlimited liability to the governmental process should be liable for their actions and those of their agents only to such an extent and subject to such conditions as are provided by this article.

§ 24–10–102, 10 C.R.S. (1982) (emphasis added). The Act defines "public entity" as:

> the state, county, city and county, incorporated city or town, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision of the state organized pursuant to law.

§ 24–10–103(5), 10 C.R.S. (1982). More-over, the word "university" is specifically mentioned in the Act:

> A claim against the state may be compromised or settled for and on behalf of the state by the attorney general, with the concurrence of the head of the affected department, agency, board, commission, institution, hospital, college, *university*, or other instrumentality thereof.

§ 24–10–112(1), 10 C.R.S. (1982) (emphasis added).

The University of Colorado is established and governed by a combination of constitutional and statutory provisions. The university is created as a state institution of higher education by the Colorado Constitution. Colo. Const. art. VIII, § 5(1). Similarly, its "body politic," the board of regents of the university, is established by the constitution. Colo. Const. art. IX, § 12. *See also Sigma Chi Fraternity v. Regents of University of Colorado,* 258 F.Supp. 515, 528 (D.Colo.1966). The constitution provides that "[t]he governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law." Colo. Const. art. VIII, § 5(2). Section 23–20–111, 9 C.R.S. (1973 & 1983 Supp.), confers on the regents the "general supervision of the university and control and direction of all funds of and appropriations to the university...." The general powers to govern the university are granted to the regents by section 23–20–112, 9 C.R.S. (1973): "[t]he board of regents shall enact laws for the government of the university...." Additionally, various other statutory provisions detail the powers and responsibilities of the board. §§ 23–20–101 to –135, 9 C.R.S. (1973 & 1983 Supp.). We have recognized that these constitutional and statutory provisions grant "broad discretion to the regents as a governing board" and create in that body "specific and particular powers" to operate the university. *Associated Students v. Regents,*

189 Colo. 482, 484–85, 543 P.2d 59, 61 (1975). Accordingly, we hold that the university and its governing board are "public entities" within the meaning of the Act.

Uberoi argues that our decision in *Uberoi v. University of Colorado,* 686 P.2d 785 (Colo.1984), precludes a holding here that the ACt applies to the university. We disagree.

In that case the issue before us was whether the Open Records Act, not the Governmental Immunity Act, was applicable to the university. While we held that the Open Records Act did not apply to the university, we observed that "the act nowhere specifically refers to the University nor to governing bodies of educational institutions. It is in every sense a general law." *Id.* at 788. Here, the General Assembly has included in the Governmental Immunity Act a specific reference to "university" and to its governing "board." § 24–10–112(1), 10 C.R.S. (1982).

■ Next, we address Uberoi's argument that if the Act applies to the university, then he complied with the notice requirements of section 24–10–109, 10 C.R.S. (1982). We conclude that his position is without merit.

Section 24–10–109, 10 C.R.S. (1982), requires that anyone who claims to have suffered an injury caused by a public entity or its employees while acting within the scope of their employment:

> [F]ile a written notice ... within one hundred eighty days after the discovery of the injury. Substantial compliance with the notice provisions of this section shall be a condition precedent to any action brought under the provisions of this article, and failure of substantial compliance shall be a complete defense to any such action.

> .       .       .       .

> (3) If the claim is against the state or an employee thereof, the notice shall be presented to the attorney general. If the claim is against any other public entity or an employee thereof, *the notice shall*

*be presented to the governing body of the public entity or the attorney representing the public entity.*

*Id.* (emphasis added). Uberoi argues that his original complaint of July 8, 1982, constitutes substantial compliance with the notice requirements. While Uberoi's original complaint contained many of the statutory requirements, he only *filed* the complaint with the Boulder District Court. He provided no notice of his claim whatsoever to either the university or the individual defendants. Section 24–10–118, 10 C.R.S. (1982), imposes the notice requirements contained in section 24–10–109, 10 C.R.S. (1982), on suits involving public employees.

> (a) Filing of the notice required by section 24–10–109 with the public entity, in the form and within the time provided by section 24–10–109, shall be a condition precedent to any such action against a *public employee*, and failure of substantial compliance shall be a complete defense to any such action against a *public employee.*

§ 24–10–118, 10 C.R.S. (1982) (emphasis added). Therefore, the notice provision in the Act also applied to the individual defendants.

Finally, Uberoi claims the notice requirement imposed by the Act is unconstitutional because it denies him his guarantee to equal protection of the law. His claim of unconstitutionality is premised on the argument that persons damaged by a tort committed by a public entity must give notice to that entity while persons damaged by similar conduct committed by a private person are not required to give notice to the alleged tortfeasor. We rejected a similar argument in *Fritz v. Regents of the University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978); and *Antonopoulos v. Town of Telluride,* 187 Colo. 392, 532 P.2d 346 (1975). In both cases we held that the

notice requirement of the Act rationally furthered legitimate state interests. We also held that the purpose of the notice requirement is to foster "prompt investigation while the evidence is still fresh; repair of any dangerous condition; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability." *Fritz,* 196 Colo., at 338, 586 P.2d at 25, *citing Antonopoulos,* 187 Colo. 392, 532 P.2d 346 (1975). With respect to "public entities," we stated that the notice requirement is to aid the state or its subdivisions in assessing liability arising from governmental activities. *Id.*

For these reasons, we affirm the district court's ruling dismissing Uberoi's first, second, third, fourth, fifth, sixth, and eighth claims for relief against all defendants.[6]

### III.

█ Uberoi next challenges the district court's ruling that the eleventh amendment barred his suit against the university. After raising the issue of whether the university was a "person" under § 1983, the trial court dispensed with that question by ruling that Uberoi's § 1983 suit could not be maintained because of the eleventh amendment. We agree with Uberoi's contention and hold that the eleventh amendment is inapplicable to his § 1983 claims, which were initiated in state rather than in federal court.

The eleventh amendment states:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

The eleventh amendment is a jurisdictional amendment. *See generally* J. Nowak, R. Rotunda & J. Young, *Constitutional Law*

---

**6.** The district court erred in relying on the Act when it dismissed Uberoi's ninth claim for relief. Unlike the eighth claim for common law negligence, the ninth claim incorporates by reference the seventh claim which was based on alleged 42 U.S.C. § 1983 violations. In *Hadley v. Moffat County School District RE–1,* 681 P.2d

938 (Colo.1984), we held that "a plaintiff is not required to file an amended complaint repeating allegations contained in claims later dismissed, when the claims are incorporated by reference in a claim not dismissed." *Id.* at 942. Accordingly, Uberoi's ninth claim must be evaluated under 42 U.S.C. § 1983.

52–61 (2d ed.1983). It bars federal jurisdiction over state governments, as such, when they are sued by anyone other than the federal government or another state. In *Maine v. Thiboutot,* 448 U.S. 1, n. 7, 100 S.Ct. 2502, n. 7, 65 L.Ed.2d 555 (1980), the Court stated that "[n]o Eleventh Amendment question is present, of course, where an action is brought in a state court since the Amendment, by its terms, restrains only '[t]he Judicial power of the United States.'" Additionally the Court held in *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), that the amendment by implication also bars suits in *federal* court by citizens of the defendant state. More recently, the Court held in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), that the eleventh amendment immunizes state officers from liability in *federal* court on state claims pendent to a § 1983 action against the officer, even if the officer has violated state law and the federal court has jurisdiction over the § 1983 claim.

Here, Uberoi brought suit against the university in state court, not federal court.[7] The eleventh amendment is simply inapplicable to suits initiated in state court.

## IV.

■ Since the eleventh amendment is not a bar to Uberoi's suit, we now address the question of whether the university is a "person" under § 1983, which provides:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (emphasis added). Of principal import to this issue is the Court's decision in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court held there that local governing bodies can be sued directly under § 1983 for monetary, declaratory, and injunctive relief in those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. In addition, local governments, like every other § 1983 "person," may be sued for constitutional deprivations resulting from governmental "custom," even though such custom has not received formal approval through the government's official decision-making channels. *Id.* Even though *Monell* did not specifically address the question of whether a state university is a "person" under § 1983, its reasoning logically requires us to conclude that a state university is a "person" within the meaning of § 1983. Since *Monell* was announced, other jurisdictions have relied on its rationale and have declared a university to be a "person" within § 1983.[8] *See Walsh v. Louisiana*

---

7. State courts have concurrent jurisdiction to entertain claims brought under 42 U.S.C. § 1983. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The courts of Colorado have accepted jurisdiction of this statutory cause of action. *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981).

8. Prior to *Monell,* courts were divided as to whether a university was a person under § 1983. Some of those that held that a university was not a person were *Regents of the Univ. of Minnesota v. Nat'l Collegiate Athletic Ass'n,* 560 F.2d 352 (8th Cir.), *cert. dismissed,* 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Prostrollo v. Univ. of South Dakota,* 507 F.2d 775 (8th Cir.), *cert. denied,* 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1974); *Blanton v. State Univ. of New York,* 489 F.2d 377 (2d Cir.1973); *Student*

*High School Athletic Association,* 616 F.2d 152 (5th Cir.1980) (while the association was neither an agency of Louisiana nor provided for under Louisiana law, the court held that it was suable as a person under § 1983); *Gay Student Services v. Texas A & M University,* 612 F.2d 160 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (state university was a "person" for purposes of this section); *Weisbord v. Michigan State University,* 495 F.Supp. 1347 (D.Mich.1980) (state university, its board of trustees and president were "persons" within meaning of this section); *Johnson v. San Jacinto Jr. College,* 498 F.Supp. 555 (D.Tex.1980) (junior college is a "person" within the meaning of this section); *Aumiller v. University of Delaware,* 434 F.Supp. 1273, 1306 (D.Del.1977) ("University ... could be treated as a person for purposes of actions brought pursuant to [§ 1983].").

### V.

Finally, Uberoi argues that the district court erred when it dismissed his § 1983 claims for failure to state a claim upon which relief can be granted. With the exception of his ninth claim which includes allegations of negligent deprivation of his due process rights, we agree with Uberoi's contention.

To state a claim for relief under § 1983, the claimant need allege only (1) that some person deprived the complainant of a right, privilege, or immunity secured by the federal constitution; and (2) that such person acted under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *International Society for Krishna Consciousness, Inc. v. Colorado State Fair & Industrial Exposition Commission,* 673 P.2d 368 (Colo.1983). It is also well-settled that complaints filed under the Civil Rights Act are to be construed liberally. *Krishna Consciousness,* 673 P.2d 368; *Morrison v. Jones,* 607 F.2d 1269 (9th Cir.1979), *cert. denied,* 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980).

The pertinent portions of Uberoi's complaint dealing with his § 1983 claims state:

50. Paragraphs 1 through 49 are incorporated herein by reference.

51. During all times mentioned in this Complaint, all Defendants *acted under color and pretense of law,* to wit, the statutes, ordinances, regulations, customs and usages of the State of Colorado and the University of Colorado, a State institution.

52. During all times mentioned herein, the Defendants, *while acting under color of law deprived Plaintiff of his rights and liberties secured to him by the Constitution of the United States,* including:

a) the right of liberty;

b) the right to due process of law;

c) the right to freedom from physical abuse, coercion and intimidation;

d) the right to be secure in his person and effects from unreasonable seizure; and

e) the right to freedom from unlawful interference and arrest.

53. The Defendants having engaged in the illegal conduct herein described, to the injury of Plaintiff, deprived Plaintiff of his rights, privileges and immunities secured to him by the First, Fourth, Fifth, Ninth, Tenth and Fourteenth Amendments to the United States Constitution, the Constitution of the State of Colorado, and 42 U.S.C. 1983.

54. As a sole result of said action, Plaintiff was severely injured physically and suffered severe mental and emotional disgress, [sic] pain and suffering.

*Coalition for Gay Rights v. Austin Peay State Univ.,* 477 F.Supp. 1267 (D.Tenn.1979); *Gross v. Univ. of Tennessee,* 448 F.Supp. 245, *aff'd,* 620 F.2d 109 (6th Cir.1978); *Schare v. State Univ. of New York at Stony Brook,* 437 F.Supp. 969 (D.N.Y.1977); *Escobar v. State Univ. of New York College at Old Westbury,* 427 F.Supp. 850 (D.N.Y.1977); *Wade v. Mississippi Co-op. Extension Serv.,* 424 F.Supp. 1242 (D.Miss.1976); *Gay Lib. v. Univ. of Missouri,* 416 F.Supp. 1350 (1976), *rev'd on other grounds,* 558 F.2d 848 (8th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978); *Dennis v. College of Virgin Islands,* 398 F.Supp. 1317 (D.V.I.1975); *Brown v. Wood,* 575 P.2d 760 (1978), *rehearing,* 592 P.2d 1250 (Alaska 1979).

55. As a sole result of said injuries, plaintiff has suffered actual damages in the amount of $100,000.00 and special damages in the amount of $25,000.00. (Emphasis added.)

The university argues that Uberoi's allegations do not meet either pleading requirement. We begin our consideration of this argument by first deciding whether Uberoi sufficiently pleaded that he was deprived of a right, privilege, or immunity secured by the constitution *or* laws of the United States.

### A.

Uberoi's complaint alleges deprivations of his constitutional rights guaranteed by the first, fourth, fifth, ninth, tenth, and fourteenth amendments. Recently, the Supreme Court held in *Daniels v. Williams,* — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d —— (1986),[9] and in *Davidson v. Cannon,* — U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d —— (1986),[10] that the protections afforded by the due process clause of the fourteenth amendment, whether procedural or substantive, are not implicated by a lack of due care for prison inmates on the part of prison officials. The Court overruled *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to the extent that *Parratt* holds that negligent conduct by a state official may "deprive" an individual of life, liberty, or property under the fourteenth amendment. *Daniels,* — U.S. at ——, 106 S.Ct. at 666. The Court, however, did "not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." *Daniels,* — U.S. at ——, 106 S.Ct. at 667. That the lack of due

care may violate amendments to the constitution other than the due process clause of the fourteenth amendment is consistent with the Court's decision in *Parratt,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). There, the Court implied that the due process analysis employed in that case was inapplicable to cases involving violations of the first eight amendments. 451 U.S. at 536, 101 S.Ct. at 1913. *See also Davidson,* — U.S. ——, —— n. 6, 106 S.Ct. 668, 674 n. 6 (Blackmun, J., dissenting) ("the Court has recognized that negligent behavior may violate other constitutional amendments"). In addition, both *Daniels* and *Davidson* make clear that intentional conduct remains actionable under § 1983. *Daniels,* — U.S. at —— n. 3, 106 S.Ct. at 667 n. 3; *Davidson,* — U.S. at ——, 106 S.Ct. at 672. Moreover, the Court in *Daniels* specifically declined to decide whether something less than intentional conduct, such as recklessness or gross negligence, is sufficient to trigger the protections of the due process clause. *Daniels,* — U.S. at —— n. 3, 106 S.Ct. at 667 n. 3.

Uberoi's seventh, tenth, and eleventh claims for relief are denominated as § 1983 claims and, when considered in the context of his complaint, allege that the defendants' conduct was deliberate, amounting to intentional torts and, possibly, recklessness or gross negligence. Thus, these allegations fall within the parameters of the foregoing principles and adequately state claims for relief. However, Uberoi's ninth claim incorporates by reference his § 1983 claim (seventh claim for relief) which alleges violations of the first, fourth, fifth, and tenth amendments, in addition to the fourteenth amendment.

9. In *Daniels,* a prisoner brought suit in federal district court under § 1983, seeking to recover damages for injuries sustained when he slipped on a pillow that he claimed was negligently left on a jail stairway by a correctional deputy stationed at the facility in which he was incarcerated.

10. In *Davidson,* a prisoner brought suit in federal district court under § 1983, seeking to recov-

er damages for injuries sustained because prison officials were negligent in protecting him from another inmate. The prisoner had sent a note to the superintendent of the prison reporting that he had been threatened by another inmate. No action was taken by the prison officials, and two days later the prisoner was attacked with a fork by the other inmate and seriously injured.

In order to rule on the issues presented by Uberoi's ninth claim, therefore, we must evaluate that claim in light of the specific allegations concerning negligence and those relating to other conduct. Consistent with our foregoing discussion, we conclude that to the extent the claim alleges a negligent violation of the due process clause of the fourteenth amendment, the claim must be dismissed. *Daniels* and *Davidson* clearly hold that negligent activity does not implicate concerns of the due process clause of the fourteenth amendment. However, to the extent that Uberoi's ninth claim alleges gross negligence, recklessness, or intentional conduct under the due process clause of the fourteenth amendment; and to the extent that his claim asserts negligence under amendments to the constitution other than the fourteenth amendment's due process clause, the claim may be maintained.

The university urges us to take cognizance of the fact that Uberoi's lawsuit was filed as a result of his attempt to enforce what he mistakenly believed to be his lawful right to inspect "public records on accounts entitled JILA administration" pursuant to sections 24–72–201 to –206, 10 C.R.S. (1973). *See Uberoi v. University of Colorado,* 686 P.2d 785 (1984). However, the fundamental question with which we are presented involves the sufficiency of the complaint. Therefore, Uberoi's possible motivation is immaterial to that determination. We express no opinion on the merits of Uberoi's claims. Whether there is sufficient evidence to establish the plaintiff's claim that the defendants' conduct rises to the level of a constitutional tort under § 1983 is an issue which cannot be resolved in the context of a motion to dismiss for failure to state a claim. Our only concern is whether the allegations contained in Uberoi's complaint sufficiently satisfy the requirements necessary to maintain a § 1983 cause of action. *See supra* note 4.

Here, Uberoi's complaint sets forth alleged deprivations which, if proven and shown to be of a sufficiently serious nature, would be of constitutional signifi-cance. Therefore, we hold that Uberoi's complaint, except for the allegations of negligence under the fourteenth amendment alleged in his ninth claim, sufficiently alleges a deprivation under the first prong of the test.

**B.**

As to the second factor, whether the employees of the university, the regents of the university and the university itself were "acting under color of state law," we begin by noting that while the university may be sued under § 1983, it does not necessarily follow that it is liable under that statute for all of the actions taken by its employees. In *Monell,* the Court held that the language and legislative history of § 1983 compel the conclusion that Congress did not intend a local government to be held liable unless conduct which was in accord with official government policy caused a constitutional tort. In particular the Court concluded that a municipality cannot be held liable *solely* because it employs a tortfeasor. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Here, McInerny was an office worker. Uberoi bases his § 1983 claim against McInerny on conduct he claims constitutes slander, assault, and battery. Without ruling on the merits of Uberoi's claim, it is unlikely that McInerny's duties included the right to use force or slander persons. Thus, the university could not be held liable under the rationale of *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. In contrast to McInerny, campus peace officers Roy and Arai are likely authorized, under certain circumstances, to use some degree of physical force in discharging their duties. If, as alleged, their actions were pursuant to official university policy and caused a constitutional tort, Uberoi could recover on his § 1983 claims against the officers and against the university.

**VI.**

In conclusion, we hold that the University of Colorado is a "public entity" under the Governmental Immunity Act and that,

Uberoi failed to comply with the notice requirements of that act, and, therefore, the trial court's dismissal of his tort claims was proper. We next hold that the eleventh amendment does not apply to Uberoi's § 1983 claims because that amendment is jurisdictional in that it prohibits citizens from bringing suit against states in federal courts. Uberoi initiated the suit in state court, not federal court. We also hold that the university is a "person" under § 1983. Finally, we hold that Uberoi alleged constitutional deprivations sufficient to state a claim for relief under § 1983.

Accordingly, the trial court's judgment dismissing the plaintiff's first through sixth, and eighth claims for relief is affirmed. The trial court's ruling dismissing the plaintiff's ninth claim for relief is affirmed, but only to the extent that the ninth claim alleges violations of the due process clause of the fourteenth amendment based on negligence. The trial court's order dismissing the plaintiff's seventh, tenth, and eleventh claims, as well as the remaining allegations made in the ninth claim, is reversed and the case is remanded to the district court with directions to reinstate those claims.

QUINN, C.J., concurs in part and dissents in part.

ROVIRA, J., concurs in part and dissents in part.

QUINN, C.J., joins in the concurrence and dissent.

QUINN, Chief Justice, concurring in part and dissenting in part:

I join the partial dissent of Justice Rovira with respect to Part V of the court's opinion. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a local governing body, such as a university, may be subject to § 1983 liability, not under a theory of *respondeat superior*, but on the basis of some official governmental policy or custom that results in a deprivation of constitutional rights, privileges, or immunities. *See generally Ben-*

*nett v. City of Slidell*, 728 F.2d 762 (5th Cir.) (en banc), *reh'g denied*, 735 F.2d 861 (5th Cir.1984). Because it is the official governmental policy or custom that constitutes the basis of the governing body's liability, the existence and general character of that policy or custom must be alleged in the § 1983 complaint. The plaintiff in his complaint has failed to allege any university policy or custom which caused or resulted in the allegedly unconstitutional conduct underlying his § 1983 claim. The complaint against the university was therefore properly dismissed for failure to state a claim upon which relief could be granted.

ROVIRA, Justice, concurring in part and dissenting in part:

I disagree with part V of the majority opinion holding that the trial court erred in dismissing Uberoi's 42 U.S.C. § 1983 claim against the University of Colorado. As the majority correctly points out, the conclusion in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that "local governments, like every other § 1983 'person,' may be sued for constitutional deprivations resulting from governmental 'custom'," has been extended to a state university. Majority op. at 900–901, and cases cited therein. However, *Monell* also added that, "Congress did not intend municipalities to be held liable *unless* action pursuant to official municipal policy of some sort caused a constitutional tort." 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis added); *see also Gay Student Services v. Texas A & M University*, 612 F.2d 160, 164 (5th Cir.1980) ("Of course, for a university to be suable under § 1983, the injury must be due to an official policy or custom."), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). Thus, since a discriminatory policy or custom is a requirement for local government liability under § 1983, the plaintiff's complaint must allege that his injuries were the result of such a governmental policy or custom. *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir.

1985). In *Zanghi*, the Second Circuit affirmed dismissal of a § 1983 action against a municipality for failure to state a claim on grounds that an allegation limited to "[m]ere negligence in permitting the continued employment of personnel ... does not rise to the level of 'action pursuant to official municipal policy of some nature.'" *Id.; see also Slay v. State of Alabama*, 636 F.2d 1045, 1046 (5th Cir.1981); *Glaros v. Perse*, 628 F.2d 679 (1st Cir.1980).

A conclusory allegation of a discriminatory custom or policy is not sufficient to meet this pleading requirement. Plaintiff must also set forth factual allegations which, if true, would establish the existence of such a policy or custom. *Strauss v. City of Chicago*, 760 F.2d 765, 766–67 (7th Cir. 1985). In *Strauss*, the Seventh Circuit dismissed a § 1983 claim against the City of Chicago for failure to state a claim, despite the fact that the complaint alleged that an arresting officer struck the plaintiff pursuant to the police department's "custom and practice" of hiring officers with a history of brutality, of brutality in investigative procedures, of violation of prisoners' civil rights, and of exonerating officers for such wrongdoing. *Id.* The *Strauss* court held that:

> The existence of a policy that caused a plaintiff's injury is an essential part of Section 1983 liability, so that some fact indicating the existence of some such policy must be pled. Without some evidence apart from the fact of employment, regardless how slight, that a policy causing plaintiff's injury might exist, the plaintiff simply cannot proceed in court against the municipality....
>
> ....
>
> We do not mean to imply that a plaintiff must plead in greater detail, but merely that the plaintiff must plead some fact or facts tending to support his allegation that a municipal policy exists that could have caused his injury....

760 F.2d at 769. *See also Silo v. City of Philadelphia*, 593 F.Supp. 870, 875 (E.D. Pa.1984) (conclusory allegation of policy to mishandle prisoner *pro se* petitions insuffi-

cient to survive motion to dismiss); *Mui v. Dietz*, 559 F.Supp. 485, 488 (N.D.Ill.1983) (claim dismissed where no facts alleged to support asserted customs); *Durkin v. Bristol Township*, 88 F.R.D. 613, 616 (E.D. Pa.1980) (conclusory allegation of official policy insufficient to meet the requirement of particularized fact pleading in civil rights cases); *Bready v. Geist*, 83 F.R.D. 432, 434 (E.D.Pa.1979) (claim against defendant township dismissed where conclusory allegations made it impossible to determine the precise nature of the custom or policy which may have produced the alleged deprivation); *cf. Luera v. Snyder*, 599 F.Supp. 1459, 1466 (D.Colo.1984) (granting a directed verdict for defendant city where plaintiff presented no evidence of a discriminatory city policy).

This additional pleading requirement for maintaining a § 1983 action against a governmental entity is entirely consistent with both our holding in *International Society for Krishna Consciousness v. Colorado State Fair*, 673 P.2d 368 (Colo.1983), and the Colorado Rules of Civil Procedure. In *Krishna Consciousness*, we held that:

> To state a claim for relief under section 1983, a complainant need allege only (1) that some person deprived complainant of a right, privilege or immunity secured by the federal constitution; and (2) that such person acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)....

673 P.2d at 373.

Neither *Krishna Consciousness* nor *Gomez* considered the question of governmental liability authorized under *Monell.* Rather, in limiting the pleading requirement for § 1983 claims against a government official, the Supreme Court, in *Gomez*, simply reversed a lower court dismissal for failing to allege that the actions complained of were committed in bad faith, on the ground that since good faith is merely a possible affirmative defense, its absence need not be pleaded by a plaintiff:

> Nothing in the language or legislative history of § 1983, however, suggests that in an action brought against a public

official whose position might entitle him to immunity if he acted in good faith, a plaintiff must allege bad faith in order to state a claim for relief. By the plain terms of § 1983, two—and only two—allegations are required to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a *federal right.* Second, he must allege that the person who deprived him of that right acted under color of state or territorial law.

446 U.S. at 639–40, 100 S.Ct. at 1923–24. Thus, the pleading requirements in actions against government officials simply track the statutory requirements of § 1983. Where, in claims against governmental and quasi-governmental entities, the Supreme Court has added the additional requirement that the deprivation be made pursuant to a policy or custom of the entity, a requirement that the policy or custom be alleged is not inconsistent.

The holdings in *Krishna Consciousness* and *Gomez* also do not displace the provisions of the Colorado Rules of Civil Procedure. C.R.C.P. 8(a)(2) requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a complaint is to afford the defendant reasonable notice of the general nature of the matter presented. *Vance v. St. Charles Mesa Water Ass'n,* 170 Colo. 313, 460 P.2d 782 (1969). The mere allegation that individual defendants acted pursuant to an institutional custom, without describing that custom in even the most superficial terms, does not provide adequate notice to the defendant since such conclusory allegations make it "impossible to ascertain the precise nature of the 'policy' or 'custom' which may have resulted in the alleged deprivation." *Bready v. Geist,* 83 F.R.D. at 434. At the very least, such a custom must be identified sufficiently for the defendant to conduct its own investigation of the matter and begin to construct a defense. Generally, that identification will require that other incidents of unconstitutional conduct be pled. *See Strauss,* 760 F.2d at 768. As the court in *Strauss* points out:

To allow otherwise would be tantamount to allowing suit to be filed on a *respondeat superior* basis. Plaintiffs could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the "claims" made.

760 F.2d at 768.

In my view, Uberoi has not sufficiently alleged that the individual defendants in this case were acting pursuant to discriminatory customs or policies of the University. Indeed, the only reference to such customs or policies in plaintiff's amended complaint is contained in paragraph 51 of his 7th claim for relief, which states:

51. During all times mentioned in this Complaint, Defendants acted under color and pretense of law, to wit, the statutes, ordinances, regulations, *customs and usages of* the State of Colorado and *the University of Colorado,* a State institution. (emphasis added).

At best, this allegation is conclusory. While a *pro se* civil rights complaint, such as the one filed here, is held to less stringent standards than one drafted by an attorney, courts still need not conjure up unpled facts to support such conclusory allegations. *See Hurney v. Carver,* 602 F.2d 993, 995 (1st Cir.1979); *Guy v. Swift and Co.,* 612 F.2d 383, 385 (8th Cir.1980). Since plaintiff has alleged no facts that would indicate the existence of discriminatory customs or policies, he has not met the *Monell* requirement for finding governmental liability under 42 U.S.C. § 1983. I would therefore affirm the trial court's dismissal of Uberoi's claims against the University of Colorado.

I am authorized to say that Chief Justice QUINN joins in this concurrence and dissent.