**The STATE of Colorado, By and Through the COLORADO STATE CLAIMS BOARD OF the DIVISION OF RISK MANAGEMENT, Plaintiff-Appellee,**

v.

**Yvonne E. DeFOOR; Frank Bowen; Margie Bowen; Elinor M. Butenhoff; Urs Frei; Michael Hatton; the Estate of Anna Hayes, Deceased; the Children and Estate of Arlene Johnson, Deceased; Estate of John Killeen, Deceased; Estate of Markus Lang, Herbert Lang, as survivor, heir and personal representative of Markus Lang, and the Estate of Markus Lang, Rita Lang as survivor, heir and personal representative of Markus Lang and the Estate of Markus Lang, and Elfriede Borrillo, as Special Administrator of the Estate of Markus Lang; the Estate of Douglas MacKenzie, Deceased; Suzanne MacKenzie; Michael McGarvey, Nancy McGarvey; Bernadine M. Remmers; Carol J. Smith, Thomas C. Smith, and Meagan N. Smith, a minor; the Estate of Gladys Stewart, Deceased;**
**the Estate of Sol Stewart, Deceased; the Children and Estate of Keith Walters, Deceased; the Children and Estate of Kathleen Walters, Deceased; Horoshi Yoshioka; Mordekhay Fumishika; Mashasiki Nakayma; Mikayo Tajima; and Rodney Alva West; and Clarendon National Insurance Company; San Juan Tours, Inc. d/b/a Gray Line Tours; and all persons or entities suffering, or claiming to suffer, damages resultant from the August 10, 1987, collision between a boulder and a Gray Line Tour Bus on U.S. Highway 40, about seven miles east of Winter Park, Colorado, while the bus was on Berthoud Pass, Defendants-Appellants,**

v.

**The COLORADO DEPARTMENT OF HIGHWAYS and the Colorado Division of Highways, Phillip Pacheco, Earman Pacheco, Merle Zimmer, Phillip West, Ross Hamilton, Edward Fink, John M. Salazar, R.L. Clevenger, Dwight Bower, Phil McCullough, and Lowell Jackson, Third-Party Defendants and Counter Defendants-Appellees.**

No. 90SA351.

Supreme Court of Colorado,
En Banc.

Feb. 3, 1992.

Rehearing Denied Feb. 24, 1992.

Sears, Anderson & Swanson, P.C., Leland P. Anderson, Denver, Victoria C. Swanson, P.C., Victoria C. Swanson, Colorado Springs, Pryor, Carney and Johnson, P.C., Thomas L. Roberts, Mark P. Martens, Englewood, Fogel, Keating & Wagner, David Struthers, Aisenberg & Kaplan, H. Paul Himes, Denver, for appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Timothy R. Arnold, Deputy Atty. Gen., Gregg E. Kay, First Asst. Atty. Gen., Simon P. Lipstein, Asst. Atty. Gen., Denver, for appellee State of Colorado.

Hall & Evans, David R. Brougham, Denver, for Individual appellees Phillip Pacheco, Earman Pacheco, Merle Zimmer, Phillip West, Ross Hamilton, Edward Fink, John M. Salazar, R.L. Clevenger, Dwight Bower, Phil McCullough, and Lowell Jackson.

The Ass'n of Trial Lawyers of America, Michael C. Maher, President, Washington, D.C., The Colorado Trial Lawyers Ass'n, John Gehlhausen, President, Denver, Vinton, Waller, Slivka & Panasci, Denis H. Mark, Denver, for amici curiae The Ass'n of Trial Lawyers of America (ATLA) and The Colorado Trial Lawyers Ass'n (CTLA).

Miller & McCarren, P.C., J. Kent Miller, Denver, for amicus curiae Colorado Head Injury Foundation, Inc.

Frederic K. Conover, II, Holme Roberts & Owen, Daniel S. Hoffman, Boyd N. Boland, Denver, for amicus curiae Colorado Bar Ass'n.

Eason, Sprague & Wilson, P.C., Eugene M. Sprague, Elizabeth A. McKeever, Denver, for amicus curiae Colorado School Districts Self Insurance Pool.

Griffiths & Tanoue, P.C., Susan K. Griffiths, Tami A. Tanoue, Elizabeth E. Salkind, Denver, Colorado Mun. League, Kathleen E. Haddock, Denver, for amici curiae Colorado Intergovernmental Risk Sharing Agency, Colorado Counties Cas. and Property Pool, Colorado Counties, Inc., Colorado Sp. Districts Property and Liability Pool, Sp. Dist. Ass'n of Colorado, and Colorado Mun. League.

Justice VOLLACK delivered the Opinion of the Court as to Parts I, II, III, and V, and announced the Judgment of the Court as to Part IV.

Claimants appeal from a district court ruling that the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, 10A C.R.S. (1988) (the Act), does not violate claimants' rights to equal protection of laws, access to courts, or due process of laws.[1] Claimants also appeal from the district court's determination that their claims against individual defendants under 42 U.S.C. § 1983 (1988) were insufficient to expose those defendants to liability. We affirm the district court ruling regarding claimants' constitutional challenges, but remand the § 1983 allegations for further hearings.

I.

On August 10, 1987, Phillip Pacheco was operating a state-owned vehicle. He used this vehicle to move a 6.7–ton boulder, pursuant to Department of Highway ditch-clearing policies, on an upper switchback on the west side of Berthoud Pass. The boulder rolled down onto a roadway and hit a tour bus. Of the thirty-four passengers on the bus, nine were killed and twenty-five sustained injuries as a result of the collision.

On January 6, 1988, the Colorado Attorney General filed an interpleader action in Denver District Court. The Attorney General attempted to deposit the sum of $400,-000 with the registry of the Court, and to have a defendant class certified pursuant to C.R.C.P. 22 and 23. On April 28, 1989, the claimants filed a motion for summary judgment, contending that section 24–10–114(1), 10A C.R.S. (1988), of the Act violated their right to equal protection of laws,

---

1. This court has jurisdiction pursuant to § 13–4–102(1)(b), 6A C.R.S. (1988), as claimants contest the constitutionality of § 24–10–114(1). Claimants were the named defendants in an interpleader action filed by the State of Colorado on January 6, 1988. Claimants are the appellants before this court.

access to courts and due process of laws.[2] Section 24–10–114(1) provides:

> (1) The maximum amount that may be recovered under this article in any single occurrence, whether from one or more public entities and public employees, shall be:
>
> (a) For any injury to one person in any single occurrence, the sum of one hundred fifty thousand dollars;
>
> (b) For an injury to two or more persons in any single occurrence, the sum of four hundred thousand dollars; except that, in such instance, no person may recover in excess of one hundred fifty thousand dollars.

The claimants also made claims pursuant to 42 U.S.C. § 1983 (1988). The State filed its own motion for summary judgment and moved to dismiss the § 1983 claims. The district court ruled against the claimants and in favor of the State on the motions for summary judgment.

## II.

Claimants urge that section 24–10–114(1), 10A C.R.S. (1988), violates their right to equal protection of the laws because it creates an arbitrary classification. Some individuals, according to claimants, may be fully compensated for injuries they sustain alone. Others jointly injured, however, may not be. Claimants further contend that the recovery limitations in the Act violate their right to equal protection of the

laws because the limitations are not rationally related to the State's interest in assuming liability for its tortious acts. Claimants premise their argument on the equal protection guarantees found in the Fourteenth Amendment to the United States Constitution and in Article II, Section 25, of the Colorado Constitution.

■ Claimants' argument raises the larger issue of whether the General Assembly can ever limit the State's liability for damages in tort, as any limitation will work favorably for some but not others. We have recognized, however, that it is within the province of the General Assembly to simultaneously create governmental liability and place limitations on actions brought against the State. *See, e.g., Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971) (abrogating sovereign immunity in Colorado). We conclude that the General Assembly can limit the State's liability for damages and affirm the district court's ruling that the Act does not violate the claimants' right to equal protection of the laws.

### A. Arbitrary Classification

Claimants contend that section 24–10–114(1) creates an arbitrary and irrational classification between individuals who may potentially receive full compensation under subsection (1)(a) as opposed to individuals who are less likely to receive full compensation for injuries under subsection (1)(b).[3]

---

**2.** Claimants also contended that the Act violated the constitutional prohibition against special legislation. That contention was not raised on appeal to this court.

**3.** Claimants argue that § 24–10–114(1) creates additional, impermissible classifications. First, claimants contend that § 24–10–114(1) irrationally separates victims of private tortfeasors from victims of public tortfeasors. We rejected this contention in *Lee v. Colorado Department of Health*, 718 P.2d 221, 227–28 (Colo.1986). Secondly, claimants contend that § 24–10–114(1) irrationally compensates victims of torts in 1979 differently than victims of torts in 1991, given the rate of inflation. This court rejected a similar argument in *Bellendir v. Kezer*, 648 P.2d 645, 647 (Colo.1982). In *Bellendir*, we held:

> In determining that the absence of an escalation of benefits provision applicable to individuals in the plaintiff's position violates no

constitutional guarantee, we do not mean to indicate that the present statute necessarily best fulfills the social and economic objectives it was designed to achieve or that a more just system could not be formulated.... However, it is not the function of this Court to rewrite legislation; the power to change the present scheme rests with the General Assembly.

*Id.* We thus decline to invalidate § 24–10–114(1) on such grounds.

Finally, claimants contend that § 24–10–114(1) irrationally separates victims of torts from victims of breaches of contracts. This contention is without merit as contracts are the product of intentional acts for which public entities can accurately plan and budget. *See, e.g., Faber v. State*, 143 Colo. 240, 241, 353 P.2d 609, 609–10 (1960) (distinguishing *Boxberger v. State Highway Dep't*, 126 Colo. 438, 250 P.2d 1007 (1952), and *Ace Flying Serv. Inc. v. Colora-*

Claimants further contend that their right to recover damages for personal injuries is important, and that section 24–10–114(1) should thus be reviewed under a heightened scrutiny equal protection test.[4]

■ This court previously declined to apply a heightened scrutiny test to an equal protection attack on section 24–10–114(1) and applied a rational basis test instead, in *Lee v. Colorado Department of Health*, 718 P.2d 221, 227 (Colo.1986) (a rational basis test applies where no fundamental right is infringed nor suspect class created). *See also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83, 98 S.Ct. 2620, 2635–36, 57 L.Ed.2d 595 (1978) (liability limitations are classic examples of economic regulation which is subject to rational basis review) (quoted in *Austin v. Litvak*, 682 P.2d 41, 50 (Colo. 1984)). Pursuant to *Lee*, we again apply a rational basis test to the instant equal protection attack on section 24–10–114(1).

### B. Rational Basis Review

■ Under the rational basis test, section 24–10–114(1) is presumed constitutional and can create a classification that affords disparate treatment to different groups only if it is rationally related to a legitimate state interest.[5] *Tassian v. People*, 731 P.2d 672, 675 (Colo.1987). We begin our analysis with a review of the State's liability for injuries caused by the negligent operation of state-owned motor vehicles.

In 1949, the General Assembly enacted a statute that rendered the State liable for injuries caused by the tortious operation of certain classes of state-owned motor vehicles.[6] Act approved May 6, 1949, ch. 118,

*do Dep't of Agric.*, 136 Colo. 19, 314 P.2d 278 (1957), as cases involving actions on contracts wherein persons dealing with the state are entitled to enforce their contract rights, from cases premised on the state's negligence.)

4. This court has previously detailed the analytical framework for addressing equal protection challenges. *See, e.g., Tassian v. People*, 731 P.2d 672, 674–75 (Colo.1987). While neither party contends that strict scrutiny should be applied to § 24–10–114(1), claimants ask this court to follow the jurisprudence of the Utah Supreme Court and the New Mexico Supreme Court in their recent application of an intermediate standard of review to equal protection attacks on statutory damage limitations. *See Trujillo v. City of Albuquerque*, 110 N.M. 621, 798 P.2d 571, 577–78 (1990), and *Condemarin v. University Hospital*, 775 P.2d 348, 352–56 (Utah 1989).

The Utah Supreme Court considered the constitutionality of damage limitations in a medical malpractice action brought against a state university hospital in *Condemarin*. When the plaintiff brought her action, government-owned health care facilities were immunized from suits by a governmental immunity act. Thus, the *Condemarin* court was required to evaluate the doctrine of sovereign immunity with respect to health care services. The *Condemarin* court considered the plaintiff's inability to bring suit and concluded that a heightened standard of review should be applied because "the legislature has not only limited recovery, but it has also extended partial governmental immunity to restrict rights which existed at common law." *Id.* at 356. We are not called upon here to evaluate partial governmental immunity and, under our holding in *Lee*, we decline to follow the *Condemarin* court.

The New Mexico Supreme Court held that damage limitations should be reviewed under intermediate scrutiny because "[a] tort victim's interest in full recovery of damages calls ... for a form of scrutiny somewhere between 'the largely toothless invocation of minimum rationality and the nearly fatal invocation of strict scrutiny.'" *Trujillo*, 798 P.2d at 578 (citations omitted). The *Trujillo* court, however, declined to pass on the constitutionality of the damage limitations at issue. We decline to follow the jurisprudence of the *Trujillo* court because we do not recognize a right to full recovery for damages, nor do we view (as claimants concede) the rational basis inquiry to be 'largely toothless.' *See, e.g., Austin v. Litvak*, 682 P.2d 41, 50 (Colo.1984) (a legislative classification failed under a rational basis test); and *Gallegos v. Phipps*, 779 P.2d 856 (Colo.1989) (statute failed to pass rational basis test).

5. The rational basis test places the burden of proof on the party challenging the statute's constitutionality. The challenger must prove beyond a reasonable doubt that the classification is unreasonable, or that it is unrelated to any legitimate state interest. *Lee*, 718 P.2d at 227; *Tassian v. People*, 731 P.2d 672, 675 (Colo.1987). The statute is afforded a presumption of constitutionality at the outset of the inquiry. *Tassian*, 731 P.2d at 675. *See also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 83, 98 S.Ct. 2620, 2635–36, 57 L.Ed.2d 595 (1978).

6. Section (1) of the Act provided:

In case any injury to the person or property of another is caused by the tortious operation of a motor vehicle by a state, county, munici-

sec. 1, 1949 Colo.Sess.Laws 268–69; *see also* §§ 13–10–1 to –3, 2 C.R.S. (1953). The General Assembly simultaneously limited the State's liability for such damages as follows:

(a) Bodily injury liability, Ten Thousand and No/100 ($10,000.00) Dollars for each person, Twenty Thousand and No/100 ($20,000.00) Dollars for each accident.

(b) Property damage liability, Five Thousand and No/100 ($5,000.00) Dollars for each accident.

*Id.* at 268. When enacting these sections, the General Assembly declared that the Act was necessary for "the immediate preservation of the public peace, health and safety." *Id.* at 269.

In 1968, the legislative council of the General Assembly appointed a committee to study sovereign immunity in Colorado. *See* Legislative Council Report to the Colorado General Assembly, *Governmental Liability in Colorado*, Research Publication No. 134 (Nov. 1968) [hereinafter "Legislative Council Report"]. The committee reviewed the extent of the State's liability in numerous areas, including liability for injuries related to roads, highways and negligent operation of motor vehicles.[7] The committee also reviewed both the amount and nature of claims filed with the State from July 28, 1965, through September 5, 1967. *Id.* at 46–48. The committee analyzed "the practical fiscal considerations which might foreseeably flow from any enlargement of tort responsibility." *Id.* at 143.

On two different occasions, the committee met for the purpose of discussing the fiscal impact of purchasing government liability insurance. *Id.* at 144. In proposing approaches to legislation regarding governmental liability, the committee anticipated the equal protection issue currently before this court:

[I]t is said that any dollar limitation is arbitrary and bound to be unfair to some claimants since such limits will usually have no rational relationship to the amount of actual damages sustained. On the other hand, this approach does eliminate to a considerable degree the danger of the catastrophe judgment, and provides a sound basis for rational fiscal planning and the computation of insurance premiums.

*Id.* at 119.[8] The committee was thus aware that any recovery limitation might not satisfy all claims equally. The committee noted that limiting recovery, however, provided "a sound basis for rational fiscal planning and the computation of insurance premiums." *Id.* In their report submitted to the General Assembly, the committee concluded that limiting liability was the best alternative to either no liability or unlimited liability. *Id.* at 144–45.

In March of 1971, this court considered and rejected the draconian doctrine of sovereign immunity in *Evans v. Board of County Commissioners*, 174 Colo. 97, 482 P.2d 968 (1971) (plaintiff sued for damages sustained after she fell on courthouse steps) In rejecting the doctrine, we held:

The effect of this opinion ... is simply to undo what this court has done and leave the situation where it should have been at the beginning ...: in the hands of the General Assembly of the State of

---

pal or quasi-municipal police, fire or health department while engaged in the line of duty, the state, county, municipality or quasi-municipality and the motor vehicle drivers thereof shall be liable for such injury to the extent hereinafter stated[.]

Act approved May 6, 1949, ch. 118, sec. 1, 1949 Colo.Sess.Laws 268.

The General Assembly did not choose to include liability for injuries caused as a result of highway construction or maintenance at that time. *See, e.g.,* § 120–7–13, 6 C.R.S. (1963).

**7.** At the time of the report, nineteen states (including Colorado) were liable in damages for injuries caused by the negligent operation of certain classes of motor vehicles. Legislative Council Report at 60 and 71; *see, e.g.,* § 13–10–1, 2 C.R.S. (1963).

**8.** The comment appeared as a criticism of a proposal to limit liability to the amount of insurance coverage. At the time of the report, twenty-five states had authority to purchase liability insurance. Fourteen of those twenty-five states permitted recovery to the extent of insurance coverage. Legislative Council Report at 72.

Colorado. If the General Assembly wishes to restore sovereign immunity ... in whole or in part, it has the authority to do so. If the legislative arm of our government does not completely restore these immunities, then undoubtedly it will wish to place limitations upon the actions that may be brought against the state and its subdivisions. This, too, it has full authority to accomplish.

*Id.* at 105, 482 P.2d at 972 (citations omitted).[9]

In May of the same year, the General Assembly exercised this authority and created governmental liability in numerous areas, including highway maintenance, while simultaneously limiting recovery for liability to $100,000 per person and $300,000 per occurrence.[10] Act approved May 22, 1971, ch. 323, sec. 1, 1971 Colo.Sess.Laws 1204–11; § 130–11–14, 6 C.R.S. (1971 Supp.); *see, e.g., State v. Hartsough,* 790 P.2d 836, 837–38 (Colo.1990). In 1979, the General Assembly approved sections 24–10–114(1)(a) and (b), which increased the liability limits to their current values—$150,000 per person and $400,000 per occurrence. Act approved June 15, 1979, ch. 219, sec. 4, 1979 Colo.Sess.Laws 863.

The General Assembly has thus rendered the State of Colorado liable for actions arising out of negligent operation of state-owned motor vehicles for forty-two years. Recovery has been limited since such actions were created in 1949. As the State's exposure has generally grown since 1949, the limits on liability have correspondingly been raised, in 1971 and again in 1979. Thus the monetary limits on the State's liability remained the same from 1949 through 1971, from 1971 through 1979, and from 1979 through the present. The Gen-

eral Assembly acted rationally during this period, when adjusting the State's liability to its monetary ability to assume such fiscal responsibilities.

## C. State Interests

■ In evaluating the state interests involved, we look to those interests invoked by section 24–10–114(1) and by the Act generally. Section 24–10–114(1) provides monetary recovery for governmental liability created by the Act. In the Act's declaration of policy, the General Assembly recognized this court's abrogation of sovereign immunity and joined in our conclusion that the doctrine of sovereign immunity frequently produced unjust results. § 24–10–102, 10A C.R.S. (1988); *Evans,* 174 Colo. at 101, 482 P.2d at 970. The General Assembly stated, however, "that unlimited liability could disrupt or make prohibitively expensive the provision of ... essential public services and functions." § 24–10–102. The General Assembly also noted that "the taxpayers would ultimately bear the fiscal burdens of unlimited liability."[11] *Id.*

Claimants argue that section 24–10–114(1) is not rationally related to the enumerated state interests for the following reasons: because the recovery limits were arbitrarily chosen; because the scheme denies full recovery where government liability is potentially greatest; because the limits have not been raised since 1979; because there is no evidence of financial hardship to the community; and, because the amount of claims paid is not substantial. We reject claimants' contentions.

In *Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971), we abrogated the doctrine of sovereign im-

---

9. We announced our decision in *Evans* along with our decisions in *Flournoy v. School District Number One,* 174 Colo. 110, 482 P.2d 966 (1971), and *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971). These cases have been superseded by statute as stated in *State v. Hartsough,* 790 P.2d 836 (Colo.1990).

10. The committee recommended setting recovery limits at $100,000 per person/$3,000,000 per occurrence. Legislative Council Report at 145. During deliberations, Representative Sack mo-

tioned, however, to establish the per-occurrence limit at $300,000, and the draft bill was accordingly amended on February 24, 1971.

11. Section 24–10–113(3) of the Act provides that when public entities are unable to pay judgments during the fiscal year, the entities "shall levy a tax, in a separate item to cover such judgment." § 24–10–113(3), 10A C.R.S. (1988). Public entities are required to levy such taxes until outstanding judgments are satisfied. *Id.*

munity and returned to the legislature the authority to regulate the State's liability. *Id.* at 105, 482 P.2d at 972. Prior to our decision in *Evans,* the legislative council carefully considered the extent to which the State could afford liability insurance. Responding to both our decision in *Evans* and the Legislative Council Report, the General Assembly exercised its authority and abrogated sovereign immunity in 1971, while simultaneously establishing recovery limits. The General Assembly raised the recovery limits eight years later.

We have previously rejected an equal protection challenge to section 24–10–114(1) in *Lee v. Colorado Department of Health,* 718 P.2d 221, 227–28 (Colo.1986). We noted that the State had an interest in creating fiscal certainty in order to execute its myriad public responsibilities. *Id.* at 227. We did not hesitate to conclude that

> [b]y limiting the liability of a public entity to a fixed amount, the Governmental Immunity Act protects the public entity against the risk that unforeseen and unlimited tort judgments will deplete the public coffers and result in the termination or substantial curtailment of important governmental functions.

*Id.* at 228. We found that section 24–10–114(1) satisfied equal protection of the laws. *Id.* at 228.

Claimants concede that their claim, the multi-person incident, is the rare exception and not the rule. Their claim thus presents the extreme case where a particular request for relief is not completely fulfilled

as a result of limited liability. As the United States Supreme Court has said,

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because "... in practice, it results in some inequality."

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *quoted in Bellendir v. Kezer,* 648 P.2d 645, 647 (Colo.1982).[12] We find that section 24–10–114(1) is rationally related to the legitimate state interests of fiscal solvency and provision of essential services while minimizing taxpayer burdens. Accordingly, we affirm the district court's holding that claimants are not deprived of their right to equal protection of the laws.

### III.

Claimants next contend that section 24–10–114(1), 10A C.R.S. (1988), deprives them of access to courts guaranteed by Article II, Section 6, of the Colorado Constitution because the statute denies them an adequate remedy for their injuries. We disagree.

■ Article II, Section 6, of the Colorado Constitution provides:

> Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay.[13]

---

12. *See also Duke Power,* 438 U.S. at 86, 98 S.Ct. at 2637 (Limiting liability "will, of necessity, be arbitrary in the sense that any choice of a figure based on imponderables like those at issue here can always be so characterized. This is not, however, the kind of arbitrariness which flaws otherwise constitutional action.").

13. Once again, claimants ask this court to follow the jurisprudence of the Utah Supreme Court and the New Mexico Supreme Court in their recent analyses of whether damage limitations burden litigants' access to courts. *See Trujillo v. City of Albuquerque,* 110 N.M. 621, 798 P.2d 571 (1990), and *Condemarin v. University Hosp.,* 775 P.2d 348 (Utah 1989).

Under the Utah Governmental Immunity Act, the defendants in *Condemarin* were immune

from suit. Thus, the plaintiff was deprived of her *initial* access to the courts. Unlike the *Condemarin* plaintiff, claimants in the present case are not deprived of their opportunity to sue the State. Thus they are not similarly deprived of their access to the courts.

The New Mexico Supreme Court considered whether damage limitations violated litigants' access to courts in *Trujillo.* The *Trujillo* court opined that an intermediate level of scrutiny should apply to statutes burdening access to courts, but declined to pass on the constitutionality of the damage limitations. We do not need to address what level of scrutiny should apply to restrictions on access to courts, as we find no access restricted in the present case.

This provision protects *initial* access to the courts. *Torres v. Portillos*, 638 P.2d 274, 277 (Colo.1981).[14] The right of access is conditioned on the existence of a legal right under law to seek redress from another. When a right accrues under law, courts must be available to effectuate that right. *Protect Our Mountain Env't, Inc. v. District Court*, 677 P.2d 1361, 1367 n. 6 (Colo. 1984) (the federal constitutional right to petition the government for a redress of grievances includes access to the courts) (citing *Hurricane v. Kanover, Ltd.*, 651 P.2d 1218 (Colo.1982), and *O'Quinn v. Walt Disney Prods., Inc.*, 177 Colo. 190, 493 P.2d 344 (1972)); *see also Curtiss v. GSX Corp.*, 774 P.2d 873, 876 (Colo.1989) (rejecting a tort claim where a statute immunized an employer from lawsuits brought by an employee for work-related injuries).

■ Claimants contend that section 24–10–114(1) violates their right to open courts because it denies them an adequate remedy. Article II, Section 6, however, does not purport to control the scope or substance of remedies afforded to Colorado litigants. The open courts guarantee rather assures litigants "that courts of justice shall be open to every person and a speedy remedy afforded for every injury." *Curtiss*, 774 P.2d at 876.

■ Claimants alternatively contend that the legislature severely curtailed a remedy without providing an adequate alternative, contrary to the requirements of *Kandt v. Evans*, 645 P.2d 1300 (Colo.1982).[15] In

*Kandt*, we considered whether a plaintiff's right of access to the courts was violated when she was precluded from filing an intentional tort action against a co-employee under the Colorado Worker's Compensation Act. *Kandt*, 645 P.2d at 1306. We held that the General Assembly could abrogate common law rights as long as an adequate statutory remedy was supplied, and concluded that there was no access to courts violation.

Claimants do not contend that the General Assembly has eliminated a right to an *adequate* remedy that existed at common law, nor do they now dispute their ability to file suit against the State. We do not find *Kandt* to govern the present case. Because the access to courts guarantee does not address adequacy of remedy, we conclude that claimants have not been deprived of their access to courts.

## IV.

Claimants contend that section 24–10–114(1), 10A C.R.S. (1988), deprives them of their rights to substantive due process under the Fourteenth Amendment to the United States Constitution and under Article II, Section 25, of the Colorado Constitution. We disagree.

■ The due process guarantee of the Colorado Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." Colo. Const., art. II, § 25.[16] We have observed that "[t]he constitutional provision

---

**14.** In *Torres*, we evaluated § 38–12–103(3)(a), 3 C.R.S. (1973), which allows landlords, but not tenants, to recover attorney fees in § 38–12–103(3)(a) actions. We held that the tenants' lack of equal opportunity to recover attorney fees did not deny initial access to the courts and therefore did not contravene Article II, § 6. *Torres*, 638 P.2d at 277.

**15.** Claimants contend that they are entitled to an adequate remedy under *Boxberger v. State Highway Department*, 126 Colo. 438, 250 P.2d 1007 (1952), wherein we stated that "[t]he rights of a citizen remain the same whether they collide with an individual or the government." *Id.* 250 P.2d at 1008. In *Boxberger*, we were concerned with a plaintiff's ability to sue the State Highway Department. The plaintiff had exe-

cuted and delivered a deed granting access rights to a portion of his farm to the Department, but never received any consideration. We concluded that the district court erred in dismissing plaintiff's action.

Like *Kandt*, *Boxberger* is readily distinguishable from the instant case as the claimants' ability to file suit against the State is not in dispute. Further, the instant case does not involve a dispute regarding contract rights, as did *Boxberger*. Thus, *Boxberger's* directive does not resolve the issue before this court.

**16.** The Fourteenth Amendment to the United States Constitution similarly provides, in pertinent part: "No State ... shall deprive any person of life, liberty, or property, without due process of law...."

pertaining to due process of law is applicable to rights, not remedies." *White v. Ainsworth*, 62 Colo. 513, 522, 163 P. 959, 962 (1917) (a party has no vested right in a remedy) (citing 6 *Am. & Eng. Ency. of Law* 947 (2d ed.)). The United States Supreme Court has similarly observed that

> although a vested cause of action is property and is protected from arbitrary interference, [appellants have] no property, in the constitutional sense, in any particular form of remedy; all that [they are] guaranteed by the Fourteenth Amendment is the preservation of [their] substantial right to redress by some effective procedure.

*Gibbes v. Zimmerman*, 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed. 342 (1933) (citations omitted). Thus, the federal and state due process guarantee does not give litigants rights to particular remedies.[17] Claimants argue that they have a legal right to damages for their injuries that is a property right which cannot be taken away without due process of law. Claimants rely on *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944), for the proposition that the right to damages for injuries constitutes property subject to the protections of the due process guarantee. The plaintiff in *Rosane* contested whether the district court erred in finding that her medical malpractice action was barred by a statute of limitations. We said that "[a] legal right to damage for an injury is property and one can not [sic] be deprived of his property without due process. There can be no due process unless the party deprived has his day in court." *Id.* at 370, 149 P.2d at 375. Plaintiff's property right to damages was thus effectuated by preserving her cause of action for damages. *Id.* at 370, 149 P.2d at 375–76. We accordingly found that her action was not barred by the statute of limitations. *Id.*

Claimants' contention equates rights to causes of action to rights to a specific remedy under section 24–10–114(1). Section 24–10–114(1) was enacted as part of the General Assembly's response to our abrogation of sovereign immunity. *Evans v. Board of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971). In *Evans*, we invited the General Assembly to recreate governmental immunity as it saw fit, in whole or in part. *Id.* at 105, 482 P.2d at 972. The General Assembly created a statutory scheme whereby claimants with rights to particular causes of action can seek *limited* recovery against the State. *See generally* §§ 24–10–101 to –120, 10A C.R.S. (1988). Section 24–10–114(1), as part of this scheme, is a limited remedial statute; it supplies a carefully defined range of remedies for causes of action created under other sections of the Act. It does not create a right to a specific dollar remedy.

Claimants' substantive due process claim to recover an amount in excess of the statutory scheme would set the unwarranted precedent that the State's liability is limited only when the particular plaintiffs are satisfied with the compensation received. The principles of limited liability, however, do not turn on the facts of particular cases.

We conclude that because there is no right to a remedy, claimants have failed to articulate a cognizable property interest in support of their due process claim.

Claimants alternatively contend that the due process guarantee incorporates claimants' right of access to courts which in turn requires a *quid pro quo*, or adequate, alternative remedy.[18] Claimants' alternative contention fails for the above-discussed reason: it fails to articulate a cognizable property interest. We thus conclude that section 24–10–114(1) does not deprive claimants of their rights to substantive due process of laws.

---

**17.** The United States Supreme Court held, in *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978), that liability limitations found in the Price–Anderson Act did not violate the due process guarantee in the Fourteenth Amendment.

**18.** Whether such a right exists is an unresolved question with respect to federal law. The *Duke Power* Court stated that "it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power*, 438 U.S. at 88, 98 S.Ct. at 2638.

## V.

Finally, claimants contend that the district court erred in dismissing their § 1983 claims against individual defendants for failure to state claims sufficient to expose the individual defendants to civil rights liability.[19] We agree.

 In order to state a claim for relief under § 1983, a plaintiff must allege that a defendant acted under color of state law and that the defendant's action deprived the plaintiff of a right secured by the federal constitution or federal laws. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Courts must then determine whether such rights have been violated by applying substantive federal law that defines the requisite state of mind and the other requirements for pleading a civil rights action. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1985); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979); Sheldon Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* § 3.02, 141 (3d ed. 1991). Finally, the defendant can assert qualified immunity defenses to defeat a § 1983 claim. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Noting that parties "against whom summary judgment is sought [are] entitled to the benefit of all favorable inferences that may be drawn from the facts," *Churchey v. Adolph Coors Company,* 759 P.2d 1336, 1339–40 (Colo.1988) (citations omitted), we are not convinced that there was no genuine issue of material fact with respect to claimants' § 1983 allegations. We thus reinstate and remand the § 1983 claims for further hearings.

19. Claimants brought third-party actions under § 1983 against various individuals, including the Executive Director of the Department of Highways, the Chief Engineer, and highway maintenance supervisors and workers.

ROVIRA, C.J., specially concurs as to Part IV, and LOHR, J., joins in the special concurrence.

MULLARKEY, J., specially concurs as to Part V and dissents as to Part II, and QUINN, J., joins in the special concurrence as to Part V.

QUINN, J., dissents as to Part IV, and MULLARKEY, J., joins in the dissent.

Chief Justice ROVIRA specially concurs:

Except as to Part IV, in which I concur in the result only, I concur in the majority opinion. I write separately to emphasize my belief that the legislature is empowered to place recovery limitations on the statutorily created claim against public entity tortfeasors without violating the claimants' constitutional guarantee of due process.

After the Colorado Attorney General attempted to deposit the $400,000 maximum amount recoverable under section 24–10–114(1)(b), 10A C.R.S. (1988), with the registry of the district court, the claimants sought summary judgment alleging that section 24–10–114(1)(b), which limits the aggregate amount payable for any single occurrence involving two or more persons to $400,000,[1] is unconstitutional because it violates their constitutional guarantees of equal protection, due process, and access to courts. I limit my analysis to claimants' allegations that this statute violates their substantive due process rights.

## I

The majority found, *inter alia,* that the General Assembly can limit the state's liability for damages. *See* maj. op. at 786. I believe that this holding correctly acknowledges the constitutionality of section 24–10–114(1)(b) both facially and as applied to the claimants in this case.

1. This section also limits the per person recovery to $150,000.

## A

In order to defeat a facial substantive due process challenge to a statute, the state need only show that a regulation is rationally related to a legitimate state purpose. *Bloomer v. Board of County Comm'rs of Boulder County*, 799 P.2d 942, 948 (Colo.1990); *Colorado Soc'y of Community & Institutional Psychologists, Inc. v. Lamm*, 741 P.2d 707, 710–11 (Colo.1987). As the majority and Justice Quinn's dissent point out, section 24–10–114(1)(b) bears a rational relationship to the legitimate government interests of fiscal solvency and fiscal integrity, and this provision is, thus, facially constitutional. *See* maj. op. at 786 and Quinn, J., dissenting at 798. Consequently, I turn to examine the effect of application of this statute on the claimants' due process rights.

## B

While I recognize that a statute not objectionable on its face may nonetheless be found unconstitutional because of its effect in operation, *People v. Albrecht*, 145 Colo. 202, 208, 358 P.2d 4, 8 (1960), I do not believe that application of section 24–10–114(1)(b) results in deprivation of the claimants' due process rights. Nor do I find it conceivable that, having adjudged this statute facially valid, it is rendered invalid by its operation which effectuates the very purpose for which the statute was enacted—setting a ceiling on aggregate recovery from a single tortious occurrence.

In this case, there were thirty-four claimants seeking recovery for injuries caused by a single occurrence. The aggregate damages figure was more than the $400,-000 recoverable under section 24–10–114(1)(b). Yet, unless there exists a depri-

vation of a property interest, there can be no denial of substantive due process. *See Faber v. State*, 143 Colo. 240, 241, 353 P.2d 609, 610 (1960) (due process operates to prohibit deprivation of rights where such rights exist under substantive law).

Under the Fourteenth Amendment to the United States Constitution and article II, Section 25, of the Colorado Constitution, individuals are protected from loss of liberty without due process of law. Often, it is difficult to characterize an affected interest as a "liberty" or "property" interest. *See Morgan v. Mansfield*, 569 F.Supp. 710, 713 (D.Colo.1983). The Supreme Court has held that the term "liberty" should be granted broad meaning and that it "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972) (citation omitted).

In *Espinoza v. O'Dell*, 633 P.2d 455, 462–64 (Colo.), *cert. granted*, 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 109 (1981), *cert. dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982), we recognized that children of an individual killed as a result of an allegedly willful and wanton tort perpetrated by the state had suffered deprivation of a liberty interest based on loss of continued relationship and association with the deceased parent.[2] With these concepts in

---

2. In *Espinoza*, we found that the Colorado wrongful death statute created an entitlement for damages in those indirectly injured by the tortfeasor's actions and that the statute also limited damages for such plaintiffs to net pecuniary loss. *Espinoza v. O'Dell*, 633 P.2d at 463. We determined that the statutory limitation on damages recoverable by these aggrieved plaintiffs did not sufficiently vindicate the claimed deprivation of liberty interest. *Id.* at 465. We analyzed the statutory damages limitation as applied to the deprivation of liberty interest suffered by these children by weighing the

state's reasons for enacting the limitations against the liberty interest asserted. We determined that the children would remain uncompensated for the loss of important nonpecuniary aspects of the family relationship if the damages limitation were applied and declined to limit the plaintiffs' § 1983 damages claim to net pecuniary losses only. Unlike this case, however, the issue in *Espinoza* focused on the failure of the wrongful death statute to provide any compensation for deprivation of certain "aspects of the liberty interest" such as "losses flowing from a

mind, I recognize that the individuals harmed or killed as a result of the accident that occurred on Berthoud Pass road have suffered a deprivation of their liberty interests. These claimants have regrettably been deprived of their freedom to remain free from bodily harm. *See Daniels v. Williams*, 474 U.S. 327, 341, 106 S.Ct. 677, 679, 88 L.Ed.2d 662 (1986).

This liberty interest, however, is not the interest affected by section 24–10–114(1)(b). This provision in no way causes, condones, or affects acts which may result in deprivation of the interest in remaining free from bodily harm. Section 24–10–114(1)(b) instead affects the amount recoverable once such harm has occurred. It was the tortious act and not the statute placing a ceiling on aggregate recovery that caused these losses of liberty interest. Consequently, the effect of the statute is not on one's substantive guarantee of liberty but on one's property interest, if any, in a remedy arising from a tortious act that may deprive an individual directly or indirectly of a liberty interest.

While recognizing that "[a] legal right to damage for an injury is property," *Rosane v. Senger*, 112 Colo. 363, 370, 149 P.2d 372, 375 (1944), the majority states that this provision is remedial and that there is no right to a remedy. Consequently, the majority finds that the claimants "failed to articulate a cognizable property interest in support of their due process claim." *See* maj. op. at 792. I believe, however, that a statutorily granted right to damages, validly limited, is property, but only to the extent to which it is statutorily defined. Property interests "are created and *their dimensions are defined by* existing rules or understandings that stem from an independent source such as *state law*." *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (citation omitted) (emphasis added). The statutory scheme of the Colorado Governmental Immunity Act (Immunity Act), adopted in 1971, provides immunity from liability for public entities against all actions which lie in tort or could lie in tort except as provided for in the Immunity Act. § 24–10–105, 10A C.R.S. (1988). There is no constitutional right for persons to sue and recover a judgment against the state for the state's tortious conduct. Consequently, claimants' right to pursue an action against the state is derived solely from the statutory exceptions listed in the Immunity Act. Since the legislature is empowered to completely eliminate any recovery against public entities for claims asserted in tort, then the legislature certainly has the authority to limit recovery amounts where it has provided a remedy. *See Bloomer v. Board of County Comm'rs of Boulder County*, 799 P.2d 942, 948 (Colo.1990) ("[T]he right to maintain an action against a governmental (state) entity is derived from statutes, and reasonable conditions ... imposed as a condition precedent to the right are mandatory.") (citation omitted). This right to damages is, therefore, a property interest subject to constitutional protection only within its defined dimension of $400,000 maximum.

In *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989), the Supreme Court laid out a test for determining the existence of a federal right for the purpose of stating a claim under § 1983. In determining whether a statute creates an interest subject to the protection of § 1983, the Court considered "whether the provision in question creates obligations binding on the governmental unit," whether the asserted interest was sufficiently concrete so as to be enforceable by the judiciary, and whether the putative plaintiff is within the class of persons intended to be benefitted by the provision. Section 24–10–114(1)(b) does obligate the government to provide certain damages when it is found liable in tort. That obligation, however, is specifically limited to an amount no greater than $400,-

variety of associational interests, such as paternal love and care, instruction, counseling, emotional support, and the family's mutual enjoyment of life together." *Id.* at 464. It did not address the constitutionality of the damages limitation on recovery for deprivation of the aspects of the liberty interest for which the wrongful death statute provides compensation.

000. Thus, while the interest of the injured claimants here is sufficiently concrete and such injured claimants are within the class of persons which section 24–10–114(1)(b) is intended to protect, the legally protected interest created by this statute is the right to recover for damages only to the extent of a $400,000 aggregate maximum.

Since the $400,000 limitation was in effect at the time of this tortious occurrence, and since the state met this legislatively imposed obligation of $400,000, I do not find that the claimants were deprived of any protectable property interest triggering the due process clause.

I am authorized to state that LOHR, J., joins in this special concurrence.

Justice MULLARKEY specially concurring in part and dissenting in part:

### I.

I specially concur in Part V of the majority opinion which remands for trial the claims asserted pursuant to 42 U.S.C. § 1983 (1988) ("1983 claims") against the individual state defendants. The 1983 claims allege that: (1) the individual defendants were "grossly negligent, reckless, and showed deliberate indifference to the public safety and human life" with respect to formulating and executing the Colorado Department of Highways ("Highways") policies on removing boulders from the Berthoud Pass road, and (2) the individual defendants' actions and inactions violated the complainants' due process protected rights to life, liberty, personal security and safe travel.

Taken in a light most favorable to the claimants, the facts show that Highways employee Phillip Pacheco deliberately pushed a 6.7 ton boulder off a switchback and over a steep incline directly above a well-traveled road. It rolled down the mountainside nearly 800 feet and struck the bus in which the claimants were riding. The custom and policy of clearing the road in such a dangerous manner had been followed by Highways for years. Prior experience, as well as a Highways-conducted study showing that neither trees nor ce-

ment and steel guardrails could be relied upon to halt a rolling boulder on a steep slope, made the defendants aware that the boulder was likely to roll onto the road below. Pacheco was the only employee working at the site at the time, and there were no flaggers or other devices to stop traffic on the road below. Thus, the evidence in the record supports the allegations of the 1983 claims that the individual employees' acts and omissions were grossly negligent, reckless or deliberately indifferent to public safety and human life.

I agree that the allegations adequately state 1983 claims. In *Espinoza v. O'Dell,* 633 P.2d 455, 464 (Colo.1981), *cert. granted* 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 109 (1981), and *cert. dismissed* 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982), we upheld a 1983 claim asserting a protected liberty interest in the children of a man who was shot and killed by police officers and we concluded that there must be a remedy when "the government itself becomes the source of danger to an individual's rights." In *Uberoi v. University of Colorado,* 713 P.2d 894, 903 (Colo.1986), we held that allegations of gross negligence, recklessness or intentional conduct are sufficient to raise 1983 claims under the due process clause. Read together, *Espinoza* and *Uberoi* support the 1983 claims now before us.

Moreover, other jurisdictions have upheld 1983 claims similar to those presented here. *See, e.g., Morrison v. Washington County,* 700 F.2d 678 (11th Cir.1983), *cert. denied* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (reinstating 1983 claim against a public hospital where the hospital had an "unruly" patient jailed and the patient died while in jail); *Ruge v. City of Bellevue,* 892 F.2d 738 (8th Cir.1989) (1983 claim held stated by estate of worker killed in a trench cave-in where defendant city had deliberate policy of not shoring its trenches). *See also* William Burnham, *Separating Constitutional and Common–Law Torts: A Critique and a Proposed Constitutional Theory of Duty,* 73 Minn. L.Rev. 515, 518–19 (1989) (discussing the origins of deliberate indifference 1983

claims in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

Our decision reversing the trial court's dismissal of the 1983 claims necessarily rejects the qualified immunity defense asserted by the individual state defendants on appeal. The 1983 claims were clearly established under the test developed in *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), and *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). I recognize that, on remand, the defendants again may claim qualified immunity contending that their conduct was objectively reasonable. *Guider v. Smith,* 431 Mich. 559, 431 N.W.2d 810, 816, n. 15 (1988) (trial court may consider immunity claims on motion to dismiss, motion for summary judgment and as defense to liability in trial on the merits). But, if so asserted, the qualified immunity claim must await a trial on the merits because conduct cannot be both deliberately indifferent as the claimants allege and objectively reasonable. *See* David Rudovsky, *The Qualified Immunity Doctrine in the Supreme Court: Judicial Activism and the Restriction of Constitutional Rights,* 138 U.Pa.L.Rev. 23, 57 (1989) (deliberate indifference precludes finding of objective reasonableness required to prove qualified immunity). Accordingly, these claims should proceed to trial.

## II.

I agree with Justice Quinn that the $400,000 per occurrence cap contained in section 24–10–114(1)(b), 10A C.R.S. (1988), is unconstitutional but I write separately because my reasoning differs in part from his. In my view, there is no rational basis for the $400,000 cap and I would strike the cap as violating the equal protection guarantees of the state and federal constitutions. This issue was not before the court in *Lee v. Department of Health,* 718 P.2d 221 (Colo. 1986), and, for that reason, *Lee* is not dispositive. Accordingly, I join Justice Quinn's dissent from Part IV of the plurality opinion and I also dissent from Part II of the majority opinion.

It is clear that, for purposes of state liability, the governmental immunity act creates two categories of injured persons. The first category is those injured in incidents involving only one or two victims. The second category is persons injured in incidents involving more than two victims. Victims in the first category may collect $150,000 per person while recovery in the second category is limited to $400,000 in total. As the number of victims in a single incident increases, the amount recoverable per person decreases until, in a case like this, only a token recovery is possible for each individual.

The validity of these two categories must be tested under the rational basis standard. That test requires that "the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest." *Lee,* 718 P.2d at 227. In our jurisprudence, the rational basis test is not a "rubber stamp" signalling automatic approval of the challenged legislation but rather it requires a careful consideration of the reasonableness of the legislative classifications at issue. Recently, in *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989), we applied the rational basis test and struck down a statute which attempted to reinstate the common law categories of trespasser, licensee and invitee for purposes of premises liability. We found that the duties imposed on landowners were not rationally related to the categories of injured persons created by the statute. *Id.* at 862 (the statutorily created hierarchy of duties "bears no rational relationship to a legitimate governmental interest and can be justified neither historically nor logically."). *See also Austin v. Litvak,* 682 P.2d 41 (Colo.1984) (plurality opinion) (invalidating medical malpractice statute of repose under rational basis test).

Here the reasonableness of the two statutory categories must be evaluated in light of the stated goal of providing fiscal certainty to the state. *Lee,* 718 P.2d at 227–28. The legislature's different treatment of the two categories is arbitrary because no limitation at all is placed on the total claims paid or the number of claims paid in

a given time period. The legislature may not have to do exact justice when drafting its statutes but the fit here is so rough and the adverse consequences are so great that the $400,000 limitation cannot stand. Consistent with the fiscal certainty goal, the $150,000 per person limit should be applied to the single incident, multiple victim case.

For these reasons, I dissent from Parts II and IV.

QUINN, J., joins in Part I of this concurrence and dissent.

Justice QUINN dissenting in part:

I dissent from Part IV of the court's opinion, in which a plurality of the court upholds the trial court's entry of summary judgment against the claimants on their due process claim. I would hold that section 24–10–114(1)(b), 10A C.R.S. (1988), which places a $400,000 limitation on the cumulative recovery in tort for injuries and damages to two or more persons in any single occurrence, violates substantive due process of law under the Colorado Constitution when, as here, the limitation is applied in a manner that will bar any recovery by the claimants once the $400,000 limitation has been exhausted.

I do not dispute the General Assembly's right to limit an individual claimant's tort recovery to $150,000. Although such limitation may be less than full compensation in a given case, it nonetheless is adequate to cover most tort claims filed against a public entity and is reasonably related to the governmental objective of safeguarding the fiscal integrity of the public entity in carrying out its many functions. In those rare cases where $150,000 is not adequate compensation, such award still provides the claimant with moderate compensatory damages and, in that respect, is far better than a legislatively decreed governmental immunity for all claims against a public entity. I also concede that the $400,0000 per-occurrence limitation is not so in-adequate as to be facially unconstitutional as violative of due process of law. Most tort claims against the state involve one or two claimants. Even when more than two persons might be injured in a single occurrence, the $400,000 per-occurrence limitation can often be applied in a manner that will provide all claimants with a moderate amount of compensation for their injuries and damages and still accommodate the governmental interest in maintaining fiscal integrity.

In the present case, however, the application of the $400,000 per-occurrence limitation to the thirty-four claimants, nine of whom are pursuing wrongful death claims, so limits what I view as a claimant's legally protected property interest in receiving a moderate measure of compensation for injuries and damages caused by a public entity as to render that interest illusory in the extreme. I accordingly would not apply the $400,000 per-occurrence limitation as a bar to the claimants' tort actions, but, rather, would permit each claimant to file and seek recovery for money damages up to $150,000 as provided by the per-claim limitation of section 24–10–114(1)(a), 10A C.R.S. (1988).

I.

I accept the proposition that the Colorado Constitution does not prohibit the General Assembly from altering the nature of a common law tort claim, from eliminating a common law right to damages so long as an adequate substitute remedy is provided, or from imposing reasonable monetary limitations on a tort claim. *See generally Kandt v. Evans*, 645 P.2d 1300 (Colo.1982); *O'Quinn v. Walt Disney Productions, Inc.*, 177 Colo. 190, 493 P.2d 344 (1972). In *Lee v. Department of Health*, 718 P.2d 221 (Colo.1986), for example, we upheld the facial validity of the monetary limitations of the Colorado Governmental Immunity Act against an equal protection challenge.[1]

1. In *Lee v. Department of Health*, 718 P.2d 221 (Colo.1986), Lawrence Wayne Lee was injured in an automobile accident and brought suit against the Department of Health for the negligence of its employee in causing the accident.

Lee's claim was in excess of the $150,000 limitation, and Lee's wife sued for loss of consortium in the amount of $150,000. The jury by special verdict found that Lee sustained total damages of $606,409.36 as a result of the combined negli-

The fact that the monetary limitations do not facially violate a claimant's right to equal protection of the laws under the Colorado Constitution, however, is not to say that such limitations may therefore be applied to any and all circumstances without implicating the due process rights of the victims of a governmental tort.

"[T]he concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). " 'Equal protection' ... emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *Ross v. Moffitt*, 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1973). Equal protection analysis, therefore, often involves an assessment of whether a statutory classification is unconstitutionally underinclusive by not including within the class all persons or groups who are similarly situated with respect to the purpose of the legislation or, alternatively, whether a statutory classification is unconstitutionally overinclusive by including within the class persons or groups who are not similarly situated with respect to the purpose of the statutory scheme. L. Tribe, *American Constitu-*

*tional Law* 1446–50 (2d ed. 1988). Due process of law, in contrast, "emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated." *Ross*, 417 U.S. at 609, 94 S.Ct. at 2443. Substantive due process analysis, therefore, looks primarily to whether governmental power is arbitrarily directed against a person so as to deprive that person of a preexisting interest in life, liberty, or property. *See People v. Max*, 70 Colo. 100, 108–10, 198 P. 150, 154 (1921).

Furthermore, there is a significant difference between upholding the facial constitutionality of a statute and the separate question of the constitutional validity of applying the same statute to a particular set of circumstances. To hold that a statute sufficiently satisfies threshold standards of constitutionality to survive a facial challenge is not to imply that the statute is thereby immune from challenge on grounds of unconstitutional application. *See, e.g., Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 337–38, 105 S.Ct. 3180, 3197–98, 87 L.Ed.2d 220 (1985) (O'Connor, J., concurring); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503–04, 102 S.Ct. 1186, 1195–

gence of the state employee and Lee, and attributed 51 percent of the negligence to the state employee and 49 percent to Lee. The jury made an identical apportionment of negligence on the wife's claim for loss of consortium and determined that her total damages amounted to $100,000. The trial court reduced Lee's award to $150,000 pursuant to the statutory per-claim limitation and also reduced the wife's award, based on the imputed negligence of Lee, to $51,000.

Lee raised a multitude of issues on appeal, including the claim that the monetary limitations of the Governmental Immunity Act violate equal protection of the laws by effectuating an arbitrary classification between public entities, which are subject only to limited liability under the statutory scheme, and private tortfeasors, who are responsible for all harms caused by their negligence. In rejecting Lee's equal protection challenge, we concluded that the statutory classification relating to claims against a public entity, although treating public entities differently from private tortfeasors, was based on real differences in fact between governmental and private tortfeasors. Public entities, we held, "are responsible for providing a vast array

of governmental services to the public and, as a result, are exposed to far greater liability and risks than a private individual." 718 P.2d at 227. The legislative decision to limit the public entity's liability, we stated, "proceeds from actual differences in the magnitude and character of the functions assumed by public entities and in the effect of greater potential liability exposure on the public entity's ability to continue its governmental functions." *Id.* We went on to conclude that the statutory classification "is reasonably related to the governmental objective of providing fiscal certainty in carrying out the manifold responsibilities of government." *Id.* at 227–28.

Our decision in *Lee* resolved only the facial validity of the monetary limitations in the context of an equal protection challenge. We did not consider whether the $400,000 per-occurrence limitation would pass constitutional muster under a due process analysis when applied in a manner that deprives a tort claimant of any meaningful redress for injuries and damages suffered as a result of the legal fault of a governmental entity in performing an activity for which the state had expressly waived the defense of sovereign immunity.

96, 71 L.Ed.2d 362 (1982); *Lee v. Smith*, 772 P.2d 82, 85 (Colo.1989); *New Safari Lounge v. Colorado Springs*, 193 Colo. 428, 434–35, 567 P.2d 372, 377 (1977). The application of the $400,000 per-occurrence limitation to the claimants in this case is a striking example of applying the facial terms of a statute in a manner that deprives the claimants of a substantial property interest in violation of due process of law.

### II.

A legislative enactment creates a legally protected interest when it creates an obligation on the part of the state to others, when it delineates the interest of potential claimants in a specific and concrete manner so as to permit judicial enforcement of the interest, and when it manifests an intent to benefit the class of which the claimants are members. *See generally Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). All three of these elements are present in the Colorado Governmental Immunity Act. First, section 24–10–106(1)(d), 10A C.R.S. (1988), specifically waives sovereign immunity for injuries resulting from a dangerous condition on a public highway. Second, inextricably intertwined with the specific right to recover against a public entity for injuries resulting from dangerous conditions on a public highway is the right of a tort claimant to recover an amount up to $150,000, as codified in section 24–10–114, 10A C.R.S. (1988). Third, the statutory right to recover an amount up to $150,000 is clearly intended to benefit persons such as the claimants in this case.

Construing sections 24–10–106(1)(d) and 24–10–114 as creating a legally protected property interest in recovering money damages from a public entity for injuries and damages tortiously inflicted by the public entity is in accord with basic concepts of fairness. Years ago this court held in *Rosane v. Senger*, 112 Colo. 363, 370, 149 P.2d 372, 375 (1944), that a legal right to recover damages for a tortiously inflicted injury is a property interest protected by due process of law. Our holding in *Rosane* is by no means unique in that respect. *See, e.g., National Ass'n of Radiation Survivors v. Derwinski*, 778 F.Supp. 1096 (N.D.Cal.1991) (on remand from Supreme Court's decision rejecting facial due process challenge to $10 statutory limit on attorney fees for assisting with disability claims before Veterans Administration, federal district court holds statute violative of due process as applied to claimants' constitutionally protected property interest in presenting complex claims for disability based on ionizing radiation); *Condemarin v. University Hospital*, 775 P.2d 348, 356–60 (Utah 1989) (Durham, J.) (holding that the balancing of statutory limitation on tort award against governmental entity and the purpose served by statutory limitation should be analyzed under due process, rather than equal protection, in order to take proper account of serious abrogation of important substantive right to recover for personal injuries caused by governmental entity). Moreover, no one today can seriously question the proposition that a person has an interest in freedom from bodily harm tortiously inflicted by a governmental entity and that such interest qualifies as a liberty interest for due process purposes. *See Daniels v. Williams*, 474 U.S. 327, 341, 106 S.Ct. 677, 679, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring). Finally, we have previously recognized that the heirs of a victim killed as a result of a governmental tort may rightfully claim "a personal constitutional liberty interest" in the continued life of their deceased spouse, parent, or child. *Espinoza v. O'Dell*, 633 P.2d 455, 463 (Colo. 1981), *cert. granted*, 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 109 (1981), *cert. dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982). If a person has a liberty interest in personal security against governmentally inflicted bodily injury and also a "personal constitutional liberty interest" in the continued life of a spouse, parent, or child, it follows axiomatically that the same person should be accorded the right to seek some measure of moderate compensation to redress the unlawful governmental deprivations of those interests. Otherwise,

the interests themselves become nothing more than legal fictions.

To be sure, the nature and extent of the property interest in recovering moderate compensation for injuries and damages caused by tortious governmental conduct finds its source in state law, specifically the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1991 Supp.). The mere fact that a property interest originates in state law, however, does not mean that a statutory scheme that creates the property interest is beyond the pale of an unconstitutional application in violation of due process of law. The plurality accepts the fact that the statutory scheme waives sovereign immunity in tort for injuries resulting from a dangerous condition on a highway and grants the tort victim the statutory right to sue and recover from the public entity responsible for the dangerous condition a judgment not in excess of $150,000, §§ 24–10–106(1)(d) & 24–10–114(1)(a), 10A C.R.S. (1988), but then, enigmatically in my view, permits the $400,000 per-occurrence limitation to annul that same statutory right whenever the total damages awarded to other victims of the same disaster have exceeded the statutory limitation. In reaching that result, the plurality reasons that "[s]ection 24–10–114 is a limited remedial statute" which "supplies a carefully defined range of remedies for causes of action created under other sections of the Act" and thus does not create a "cognizable interest in support of [the claimants'] due process claim." Plurality op. at 792. The $400,000 per-occurrence limitation of section 24–10–114(1), however, can hardly be considered "remedial" when its application to the multi-victim disaster in this case results in depriving most of the injured claimants, as well as most of the heirs or representatives of those killed in the accident, of any legal redress whatever for their respective injuries and damages. I view the plurality's rejection of the claimants' due process claim as countenancing the very type of incongruous creation and annulment of a significant property interest that the doctrine of unconstitutional application was designed to prohibit.

The state may not grant the victim of a governmental tort a property interest in recovering a judgment against a public entity and then, in the same statutory scheme, so condition the right on circumstances beyond the control of the victim as to result in the abolition of the very interest created by the statute. In holding otherwise, the plurality employs a "bittersweet" analysis which requires a tort claimant to take the "bitter" per-occurrence limitation with the "sweet" statutory right to sue the governmental tortfeasor. That analysis, however, leads to the anomalous result of elevating the $400,000 limitation to the status of a fundamental defining element of the very interest created by the statute. A property interest, "cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). On August 10, 1987, therefore, when Department of Highways employees moved a 6.7–ton boulder off the side of a public highway and caused it to roll down Berthoud Pass and strike a bus and kill nine occupants and injure twenty-five occupants, each injured victim and the heirs or representatives of each deceased victim had a legislatively created and legally protected property interest in suing the state and in receiving a compensatory damages award, not to exceed $150,000, upon proving that the Department of Highways was legally at fault in causing the dangerous road condition.

III.

It should be kept in mind that this case comes to us on summary judgment and that, consequently, the trial court's judgment can be affirmed only if this court is convinced that the application of the $400,000 per-occurrence limitation would not violate due process of law under any set of factual circumstances disclosed by the record. *E.g., Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1339–40 (Colo.1988); *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712–13 (Colo.1987); *Mount Emmons Mining Co. v. Town of Crested*

*Butte,* 690 P.2d 231, 238–41 (Colo.1984). I am unable to conclude that the application of the statutory limitation is consonant with due process of law under the state of the record in this case.

The record shows that the costs incurred by only a few of the nine persons killed and the twenty-five persons injured in this disaster will exhaust the statutory per-occurrence limitation. A hospital that treated one of the victims killed in the accident has filed a lien for $327,907.60 for medical costs. In addition, one of the injured victims has tendered a notice of claim to the Attorney General alleging damages in the amount of $150,000, and another injured victim has filed a notice of claim in the amount of $500,000. The record also contains an affidavit from an experienced arbiter who reviewed the documents relating to the damages incurred by the claimants. The arbiter's affidavit states that the probable aggregate of damage to all claimants and their families greatly exceeds $400,000 and that the damage to several individual claimants clearly exceeds $150,000. Obviously, therefore, if one wrongful death claimant receives $150,000, and the two other injured claimants collect $150,000 and $100,000 respectively on their claims, the remaining thirty-one victims will be left without any recourse whatever to obtain compensation for their injuries. Even if the $400,000 were to be divided equally among all claimants, the resulting award of approximately $11,000 to each claimant would amount to nothing more than an illusory remedy at best when the $11,000 is weighed against the staggering medical costs, injuries, lost wages, permanent disability, loss of earning capacity, pain and suffering, and loss of enjoyment of life incurred by the claimants.

Finally, so far as the record before us shows, permitting each claimant to sue the Department of Highways and recover a judgment for $150,000 would not endanger the fiscal integrity of the state. By statute, the Division of Risk Management is charged with the administration of the fund out of which claims against a state public entity are paid. §§ 24–30–1501 to – 1520, 10A C.R.S. (1986 & 1991 Supp.). The Risk Management Division, in the discovery phase of the case, produced several annual reports which it prepared for the General Assembly. The 1989 report, which is the latest in the record, shows that since the year 1985 the Division received state appropriations of approximately $7,000,000 and earned $549,922 in interest on those appropriations. 1989 Annual Report of Division of Risk Management at 2. During this same period the Division paid out only $927,437 in claims and set aside $1,707,861 in reserve for open claims. *Id.* at 4. The record also shows that a task force appointed by the Governor to study the liability limits of the Colorado Governmental Immunity Act found that approximately 1500 claims per year were filed against the state since 1985, that the average payment on these claims was $1,000, and that the largest payment was only $50,000. Governmental Immunity Limits Task Force Report to Governor and General Assembly at 3 (1988).[2]

Under the circumstances of this case, the application of the $400,000 per-occurrence limitation to the thirty-four claimants consigns them to running a "race to judgment" in order to vindicate their rights. The speed at which a judgment may be obtained in that race is, for all practical purposes, a matter of chance. Yet, to all who lose the race, the "law has become a

**2.** The task force recommended that section 24–10–114, 10A C.R.S. (1988), be amended by the addition of the following subsection:

(5) Notwithstanding the limits established in this section, a judgment or judgments may be claimed and rendered against the state in excess of these amounts, provided that the portion of the judgment or judgments which exceeds the limits shall not be paid until and unless the General Assembly authorizes payment of the whole portion or any part thereof

which exceeds the limits. Any claimant may present proof of judgment to the General Assembly and request payment of that portion of the judgment which exceeds the limits. Any portion in excess of the limits shall be paid from the general fund or any other funds established by the General Assembly.

Governmental Immunity Limits Task Force Report to Governor and General Assembly at 2 (1988).

phantom and justice a dream, and constitutional guarantees of the sacredness of life, liberty, and property, 'a tale ... full of sound and fury, [s]ignifying nothing.'" *Max*, 70 Colo. at 112, 198 P. at 155.

I accordingly dissent from the plurality's rejection of the claimants' due process claim.

MULLARKEY, J., joins in this dissent.